428 S.E.2d 65

The **COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR, Complainant,**

v.

**Sherman L. LAMBERT, A Member of the West Virginia State Bar, Respondent.**

**No. 21465.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1993.

Decided Feb. 25, 1993.

---

Sherri D. Goodman, Bar Counsel, Charleston, for complainant.

Sherman L. Lambert, pro se.

## PER CURIAM:

In this attorney disciplinary proceeding, the Committee on Legal Ethics of the West Virginia State Bar ("the Committee") recommends that this Court annul the license to practice law of the respondent, Sherman L. Lambert. Furthermore, the Committee recommends that the respondent should not be reinstated until he has made full restitution to the State Bar's Client Security Fund. The hearing panel of the Committee found that the respondent converted two clients' property to his own personal use, in violation of *W.Va.Code*, 61–3–20 [1931] and DR 1–102(A)(3)[1]; the respondent caused a forged instrument to be uttered in violation of *W.Va.Code*, 61–4–5 [1961] and DR 1–102(A)(4)[2]; the respondent failed to pay over money received on behalf of a client, in violation of *W.Va. Code*, 30–2–13 [1931] and DR 9–102(B)(4)[3]; and, the respondent failed to inform the Committee during reinstatement proceedings that he owed clients money, in violation of Rule 8.1(b) of the Rules of Professional Conduct.[4] The respondent acknowledged an earlier problem with alcohol abuse which he contends has been resolved. It is recommended by the Committee that the respondent's license be annulled for converting clients' property to his own personal use, causing a forged instrument to

---

1. *W.Va.Code*, 61–3–20 [1931] provides, in relevant part, that:

> If any ... agent, clerk or servant ... of any firm or person, ... embezzle or fraudulently convert to his own use ... money, or any effects or property of any other person, which shall have come into his possession, or been placed under his care or management, by virtue of his office, place or employment, he shall be guilty of the larceny thereof.

The former Disciplinary Rules of Professional Responsibility, specifically, DR 1–102(A)(3) provides, in relevant part, that "[a] lawyer shall not: [e]ngage in illegal conduct involving moral turpitude." The Disciplinary Rules of Professional Responsibility were superseded by the Rules of Professional Conduct on January 1, 1989.

2. *W.Va.Code*, 61–4–5 [1961] provides, in relevant part, that "[i]f any person forge any writing, ..., to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged, he shall be deemed guilty of a felony[.]"

DR 1–102(A)(4) provides that "[a] lawyer shall not: [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

3. *W.Va.Code*, 30–2–13 [1931] provides, in relevant part, that:

> If any attorney receive money for his client as such attorney and fail to pay the same on demand, or within six months after receipt thereof, without good and sufficient reason for such failure, it may be recovered from him by suit or motion; ..., and he shall be deemed guilty of a misdemeanor[.]

DR 9–102(B)(4) provides "[a] lawyer shall: [p]romptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

4. The Rules of Professional Conduct were promulgated and adopted on June 30, 1988, and became effective January 1, 1989. Rule 8.1(b) is part of the Rules of Professional Conduct and states:

> An applicant for admission to the bar, or a lawyer in connection ... with a disciplinary matter, shall not: fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]

be uttered, failing to pay over money received on behalf of a client and failing to inform the Committee during reinstatement proceedings that he owed clients money. We adopt the recommendation of the Committee. For the reasons stated below, we hereby order the annulment of the respondent, Sherman Lambert's, license to practice law in the State of West Virginia, and we further order that he shall not be permitted to petition for reinstatement until he has made full restitution to the State Bar's Client Security Fund.

I

In this case before us, the charges brought against the respondent evolve from two separate cases in which the respondent was counsel for the respective plaintiffs. In the first case, the respondent represented Terry and Carmen Allen on a one-third contingent fee basis in a civil action entitled *Terry Lee Allen and Carmen H. Allen v. Jeffrey Dean Marshall,* Jefferson County Circuit Court, Civil Action No. 86–C–310, for personal injuries received in an automobile accident.

On October 14, 1987, the parties agreed to a settlement of $8,450 and the respondent prepared a release. A check was issued by the defendant's insurer for the aforementioned amount on October 19, 1987. The check was made payable to "Terry & Carmen Allen Individ. & As Husband & Wife & Blue Cross Blue Shield as Subrogee & Sherman Lambert Att." The check was endorsed by the respondent, and it appeared to be endorsed by "Terry L. Allen" and "Carmen H. Allen." However, Mr. and Mrs. Allen testified that the signatures were not theirs, and they were unaware the check had been issued. The respondent denied the fact that he or anyone else could have forged the Allens' signatures on the check. On October 26, 1987, the circuit court entered an order dismissing the Allens' case with prejudice on the grounds that a compromise and settlement had been reached.

From October 22, 1987, when the respondent received the settlement check, through December 1987, he made no effort to deliver the settlement money to the Allens. The Allens unsuccessfully attempted to contact the respondent on numerous occasions to check on the status of the settlement money. Finally, on December 18, 1987, the respondent advised Mrs. Allen that he had received the settlement check, and on that same day, he wrote and personally delivered, to the Allens, a check drawn on his trust account in the amount of $5,633.61. However, when Mrs. Allen tried to negotiate the check, on December 18, 1987, she was informed that there were insufficient funds in the account. The couple was unsuccessful in locating the respondent thereafter.

In order to press criminal charges, Mr. Allen returned to the bank with the check and had the check stamped as being returned for insufficient funds on December 22, 1987. Subsequently, Mr. Allen filed a criminal complaint against the respondent for a worthless check on December 23, 1987. On May 10, 1989, the Allens applied to the Client Security Fund, a discretionary fund maintained by the Board of Governors of the West Virginia State Bar to recompense clients for attorney theft. The Allens were paid $5,000.00, the maximum amount payable by the Fund, on November 1, 1989.

The respondent was arrested on February 27, 1991. Pursuant to a plea agreement, the respondent pleaded no contest to a misdemeanor worthless check charge on July 9, 1991. He then made restitution to the Allens in the amount of $600.00, the difference between the total amount respondent owed the Allens and the amount they received from the Client Security Fund, plus $170.00, the amount the Allens paid to an attorney to assist them in filing an application with the Fund.

During the period of time between when Mr. Allen swore out the warrant and the respondent's arrest, the respondent left the State and abandoned his practice and obligations thereto. As reflected below, the respondent's departure from the State coincided in time with his unlawful conversion of monies of another client.

In the second action, the respondent represented Seneca Valley Feeds, owned by Gordon and Ann Erricker, to collect an overdue account for horse feed against Susan Newcomer. The respondent filed the suit in 1986, in the Circuit Court of Jefferson County, *Seneca Valley Feeds v. Susan Newcomer*, Civil Action No. 86–C–300, and obtained summary judgment in favor of Seneca Valley Feeds for $2,880.01, plus interest on July 27, 1987.

On November 30, 1987, Mr. Robert R. Skinner, defendant's attorney, notified the respondent that he had received a check in the amount of $3,014.43, made payable to "Sherman Lambert, Attorney for Seneca Valley Feeds," in satisfaction of the judgment. Later that same day, the respondent drove to Dickerson, Maryland, where Seneca Valley Feeds was located and obtained the Errickers' signature on the release. The Errickers and the respondent agreed that they would pay his fee in advance, and the respondent would endorse and forward the settlement check to them when he received it. Accordingly, Ann Erricker wrote a check to Sherman Lambert, in the amount of $1,004.81, dated November 30, 1987, to pay for the respondent's one-third contingent fee. The respondent negotiated his check on December 1, 1987.

The respondent then tendered the Errickers' release to Mr. Skinner and obtained the check in satisfaction of the judgment. However, instead of endorsing the check and forwarding it to the Errickers as agreed, the respondent negotiated the check for cash at the Peoples Bank of Charles Town. The Errickers never received their money despite repeated efforts to contact the respondent.

On August 18, 1988, Mr. Erricker applied to the Client Security Fund and was paid $3,014.43 in two installments, in November of 1988 and on May 2, 1989. The respondent never made restitution to the Fund for the $8,014.43 it paid to the Allens and the Errickers.

## II

The Committee petitioned this Court in December of 1987, for an order requiring the respondent to submit to a psychiatric examination regarding disciplinary troubles unrelated to the events in the aforementioned cases. On April 12, 1988, this Court granted the petition. *Committee on Legal Ethics v. Lambert*, No. 18219 (W.Va. April 12, 1988). The respondent did not appear for his scheduled examination and this Court suspended his law license indefinitely by order entered May 18, 1988.

The respondent petitioned this Court, in December of 1988, for reinstatement of his law license, yet, he had failed to comply with this Court's order to submit to a psychiatric evaluation in West Virginia. Pursuant to Chapter III, ¶ 6 of the Rules of the West Virginia State Bar, the respondent completed a reinstatement questionnaire form and attached it to his December, 1988 petition. However, the respondent answered "none" or left the answer space blank in response to questions in the application regarding the respondent's financial obligations to all creditors, record of arrest or prosecution of the respondent during suspension and charges of fraud made against the respondent during suspension.

On February 27, 1990, and March 7, 1990, the respondent submitted to a psychiatric evaluation by Bradley Soule, M.D. Thereafter, the respondent actively sought his reinstatement, and this Court referred the reinstatement matter to the Committee by order dated March 29, 1990. A reinstatement hearing was held before a subcommittee of the Committee on October 9, 1990. The respondent testified that prior to his suspension he was an alcoholic but did not recognize his addiction at the time, and thus was irresponsible in his duties towards his clients. Counsel for the Bar was unaware of the payments made from the Client Security Fund. Since Bar Counsel was not made aware of those events, the respondent was not questioned on those transactions. Based upon the hearing panel's recommendation, this Court reinstated the respondent's law license on December 5, 1990.

On July 20, 1992, a hearing was held before the subcommittee to determine the status of the respondent's license. Counsel

was present on behalf of the Committee, and the respondent appeared *pro se.* The Erricker and Allen cases, discussed *supra,* were then brought before the subcommittee for discussion. Although these incidences occurred prior to his previous suspension and subsequent reinstatement, the offenses were serious and could not be disregarded, despite the unfortunate delay in prosecution. In this proceeding, the respondent testified that he no longer suffered from the effects of alcoholism or drug impairment, but his testimony failed to acknowledge the seriousness of the wrongs he has committed during his battle with alcohol. The hearing subcommittee submitted its report to the full hearing panel of the Committee on October 17, 1992. The Committee subsequently adopted the report on October 28, 1992, and has recommended that the respondent's license be annulled.

### III

■ We note initially that we have historically placed the burden of proof on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee as stated in syllabus point 1 of *Committee on Legal Ethics v. Lewis,* 156 W.Va. 809, 197 S.E.2d 312 (1973):

> In a court proceeding prosecuted by the Committee on Legal Ethics of the West Virginia State Bar for the purpose of having suspended the license of an attorney to practice law for a designated period of time, the burden is on the Committee to prove by full, preponderating and clear evidence the charges contained in the complaint filed on behalf of the Committee.

We find that the Committee has met this burden.

■ The first two issues before us deal with (1) the respondent's wrongful conversion of the Allens' and Errickers' settlement money for his own personal use, and (2) the respondent's utterance of a forged instrument; specifically, the negotiation of the Allens' forged settlement check. The respondent's sole defense to the charges

against him is that the events had occurred so long ago he cannot find the pertinent case files he needed to formulate his defense. This argument is not persuasive. We have held in syllabus point 5 of *Committee on Legal Ethics v. Pence,* 161 W.Va. 240, 240 S.E.2d 668 (1977): "Detaining money collected in a professional or fiduciary capacity without bona fide claim coupled with acts of dishonesty, fraud, deceit or misrepresentation justify annulment of an attorney's license to practice law."

■ The third issue concerns the Committee's finding that the respondent failed to dispense settlement monies to his clients. The respondent has failed to offer any explanation as to why he did not forward the check from John Newcomer, Susan Newcomer's father-in-law, to the Errickers. The respondent's conduct, in this instance, is particularly egregious and is in direct contravention of the established case law. In syllabus point 3 of the *Committee on Legal Ethics v. Pence,* —— W.Va. ——, 216 S.E.2d 236 (1975), we stated "[a]n attorney must promptly pay or deliver, upon request by a client, the funds or other property in the possession of the attorney to which the client is entitled."

The final issue before us concerns the respondent's failure to inform the Committee, in the reinstatement proceeding, that he had converted clients funds to his personal use. Pursuant to the Rules of Professional Conduct, the respondent has an obligation to be forthright with the Committee. However, this seems to be only one of many instances in which the respondent has acted with such persistent indifference to his ethical obligations and the disciplinary process. For example, besides the obvious charges against him, the respondent never addressed the merits of the charges against him, except to deny the allegations, blame them on someone else, claim a convenient lack of recollection or complain about the tardiness of their prosecution. In addition, the respondent never acknowledged the seriousness of the wrong or any remorse for the wrong, nor has he ever made any effort to reimburse the

Client Security Fund for monies paid out because of his wrongdoing.

 The respondent contends that his alcoholism is a mitigating factor.[5] We have addressed the importance of considering mitigating facts and circumstances in determining what disciplinary action, if any, is appropriate. *See* syl. pt. 2, *Committee on Legal Ethics v. Mullins*, 159 W.Va. 647, 226 S.E.2d 427 (1976). The Committee contends that an attorney should not be able to cavalierly defend charges so serious as forgery and theft of client monies by simply invoking a past history of alcohol abuse. The Committee argues that such evidence in mitigation should only be deemed persuasive when the attorney has acknowledged the wrong, has remedied the problem which led to the wrong and has otherwise convinced the Committee that such misconduct is not likely to recur in the future. Furthermore, the Committee was not persuaded by the respondent's evidence in mitigation and neither are we. We agree with the Committee's contentions and findings. The respondent has demonstrated through his behavior towards his clients and throughout these proceedings, a total disregard for the Code of Professional Responsibility and the laws of this State.

Accordingly, for the reasons stated above, we find that the respondent convert-ed two clients' property to his own personal use, in violation of *W.Va.Code*, 61–3–20 [1931] and DR 1–102(A)(3); the respondent caused a forged instrument to be uttered, in violation of *W.Va.Code*, 61–4–5 [1967] and DR 1–102(A)(4); the respondent failed to pay over money received on behalf of a client, in violation of *W.Va.Code*, 30–2–13 [1931] and DR 9–102(B)(4); and, the respondent failed to inform the Committee during reinstatement proceeding that he owed clients money, in violation of Rule 8.1(b) of the Rules of Professional Conduct. We accept the recommendation of the Committee on Legal Ethics and order the annulment of the respondent's license to practice law in the State of West Virginia. Further, the respondent shall not be reinstated until he has made full restitution to the State Bar's Client Security Fund. We shall also require the respondent to reimburse the Committee for the actual and necessary expenses reasonably incurred by it in connection with this proceeding.

License Annulled.

---

5. Certain matters were brought to the subcommittee's attention for consideration in arriving at a decision. Specifically, since the respondent's license has been reinstated, the following events have occurred: he was found in contempt of court by a federal judge for failing to appear at a scheduled trial; he has another contempt proceeding pending in state court; he has been lax in his efforts to defend this pro-ceeding; and, his license has been temporarily suspended, by this Court, pending the results of a medical evaluation, *Investigative Panel of the Committee on Legal Ethics v. Lambert*, No. 20970 (W.Va. July 10, 1992). The merits of these charges are not the basis for any conclusion or recommendation of the subcommittee. However, the factors were considered in weighing the respondent's evidence in mitigation.