505 S.E.2d 619

**LAWYER DISCIPLINARY
BOARD, Petitioner,**

v.

**Thomas W. KUPEC, A Member
of the West Virginia State
Bar, Respondent.**

**No. 23011.**

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 17, 1998.

Decided April 2, 1998.

---

Sherri D. Goodman, Chief Counsel, Steven Johnston Knopp, Lawyer Disciplinary Counsel, for Petitioner.

Amy Smith, Herbert G. Underwood, Steptoe & Johnson, Charleston, for Respondent.

DAVIS, Chief Justice:

This is a lawyer disciplinary proceeding against respondent, Thomas W. Kupec, a member of the West Virginia State Bar. The

1. The role of the ODC in lawyer disciplinary proceedings is discussed in Part III, Section A of this opinion.

2. The relationship between HPS and the Board is discussed in Part III, Section A of this opinion.

Office of Disciplinary Counsel (hereinafter "ODC") [1] prosecuted this matter for the petitioner, Lawyer Disciplinary Board (hereinafter the "Board"). The Board's Hearing Panel Subcommittee (hereinafter "HPS") [2] found that Mr. Kupec misappropriated funds held by him in a special account. HPS recommended that this Court suspend Mr. Kupec from the practice of law for sixty (60) days; that Mr. Kupec be required to file with the ODC a summary outlining the manner in which his trust accounts have been established, monitored and audited; that Mr. Kupec agree to the periodic audit by the ODC of any trust account maintained solely or jointly by him; that Mr. Kupec secure an additional six (6) hours of Continuing Legal Education (hereinafter "CLE") credit in Ethics and Office Management; and that all costs of the proceedings be assessed against Mr. Kupec. As is more fully set out in the body of this opinion, any sanction imposed upon Mr. Kupec is held in abeyance pending the remand of this matter to the HPS.

## I.

### FACTS

This case arises out of the sale of property by Mr. Kupec in his capacity as a Special Commissioner appointed by the Circuit Court of Ritchie County. On February 26, 1985, Mr. Kupec conducted a court ordered public sale of certain property. The property was sold for $50,800.00. An order was entered on April 17, 1985, by Judge Daniel Douglas [3] confirming the sale, approving expenses and fees, and providing for the distribution of the proceeds from the sale. Pursuant to Judge Douglas' order, Mr. Kupec was obligated to pay to his client, Freda Bumgardner, all sums due her from the sale; deduct approved fees and expenses; and remit to the General Receiver for the Circuit Court of Ritchie County the remaining balance of $28,802.26 for any parties unknown to the court.

3. Judge Douglas was sitting by temporary assignment as a result of Judge Gene Campbell's death.

On April 24, 1985, the Governor appointed Judge Sam White to fill the vacancy resulting from Judge Campbell's death. On May 21, 1985, Mr. Kupec tendered his report of Final Receipts and Disbursements and Distributions, along with a check in the amount of $28,802.26, to Judge White. Judge White refused to enter a final order in the case. Judge White returned the check to Mr. Kupec indicating the amount of attorney's fee charged by Mr. Kupec of $3,860.00 was too high.

For reasons not apparent from the record, the case languished without activity until 1992. On March 12, 1992, Judge White held a hearing regarding disbursement of the funds. During that hearing, Mr. Kupec advised Judge White that he could immediately tender the balance of $28,802.26 to the circuit court. However, the full property sale balance of $28,802.26 was not paid to the General Receiver for the Circuit Court of Ritchie County until September, 1992.

On May 6, 1992, Judge White filed a complaint against Mr. Kupec regarding the property sale funds. An investigation for probable cause was conducted by the Investigative Panel of the Board. The investigation revealed that from the period January 31, 1990, through February 28, 1992, monies were consistently withdrawn from the account in which the $28,802.26 was deposited. At one point, the account reached a low of $5,892.97. In fact, on the day Mr. Kupec informed Judge White that he could instantly write a check for the balance, the account contained $13,817.61. The Investigative Panel also discovered that Mr. Kupec had placed the $28,-802.26 in his firm's account,[4] which was used for client funds, including advances of costs

and expenses.[5] The evidence revealed that Mr. Kupec and members of his firm used portions of the $28,802.26 to pay expenses in other cases over a seven year period.

As a result of the investigation, Mr. Kupec was formally charged by the Investigative Panel with violating the following provisions of the Rules of Professional Conduct: Rule 1.15(b), Rule 1.3, Rule 3.3(a)(1), and Rule 8.4(b), (c) and (d); and violating the now superseded Code of Professional Responsibility, DR 6–101(A)(3) and DR 1–102(A)(5). The formal charges were filed on July 14, 1995. ODC prosecuted the charges before HPS. Prior to the evidentiary hearing, Mr. Kupec filed a written motion to dismiss all of the charges on the basis of untimeliness. ODC filed a response opposing the motion. It appears that the chairperson for HPS dismissed the charged violations of Rule 1.3, DR 6–101(A)(3) and DR 1–102(A)(5) by order dated July 22, 1996. The July 22, 1996, order was affirmed by HPS on August 15, 1996.[6]

Evidence was taken on the remaining charges. HPS found that the evidence established Mr. Kupec "utiliz[ed] and permitt[ed] others in his firm to utilize funds from the special account to subsidize other litigation expenses over a period of years and in the amounts of thousands of dollars[.]" Based upon this finding, HPS concluded that Rule 1.15(b)[7] was violated by Mr. Kupec. HPS dismissed all remaining charges.[8] In view of its finding that Mr. Kupec had violated Rule 1.15(b), HPS recommended that this Court suspend Mr. Kupec from the practice of law for sixty (60) days; that Mr. Kupec be required to file with the ODC a summary

---

4. Mr. Kupec's firm consisted of partners J.T. Michael and Thomas W. Michael.

5. The account was designated "Michael and Kupec Special Account".

6. The record in this matter does not contain the dismissal orders nor indicate why the charges were dismissed.

7. Rule 1.15(b) states:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or

third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

8. The remaining charges were violations of Rule 3.3(a)(1) and Rule 8.4(b), (c) and (d). As indicated in the body of the opinion, HPS purportedly dismissed charges pertaining to Rule 1.3, DR 6–101(A)(3) and DR 1–102(A)(5) prior to the evidentiary hearing.

outlining the manner in which his trust accounts have been established, monitored and audited; that Mr. Kupec agree to the periodic audit by the ODC of any trust account maintained solely or jointly by him; that Mr. Kupec secure an additional six (6) hours of CLE credit in Ethics and Office Management; and that all costs of the proceedings be assessed against Mr. Kupec. Mr. Kupec objects to the finding of a violation of Rule 1.15(b). ODC does not oppose the sanctions as recommended by HPS.

## II.

### STANDARD OF REVIEW

 In syllabus point 2 of *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788; 461 S.E.2d 850 (1995), this Court articulated its standard of review in lawyer disciplinary matters:

> A de novo standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Hearing Panel Subcommittee's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Hearing Panel Subcommittee's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record. Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

It was held in syllabus point 3, in part, of *In re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980), that "[a]bsent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the [Hearing Panel Subcommittee] ... are to be given substantial consideration." We have also made clear that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3,

*Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. Pt. 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). It is from this standard of review that we analyze the questions of law, findings of fact and recommendations by the HPS to this Court.

## III.

### DISCUSSION

#### A.

#### *The Rules of Lawyer Disciplinary Procedure*

We take this opportunity to clearly articulate the authority and procedure of the Board and its entities when recommending the discipline for an attorney. We will discuss and explain the relationship of the Board, the ODC, the Investigative Panel, the HPS and this Court in lawyer disciplinary matters. More specifically, we will address the authority of this Court to review and accept or reject the dismissal of formal charges filed against an attorney by the Investigative Panel.

 We begin with the basics. The authority of the Supreme Court "to regulate and control the practice of law in West Virginia, including the lawyer disciplinary process, is constitutional in origin." *Lawyer Disciplinary Bd. v. Vieweg*, 194 W.Va. 554, 558, 461 S.E.2d 60, 64 (1995). *See* W.Va. Const. art. VIII, § 3 ("The court shall have power to promulgate rules ... for all of the courts of the State relating to ... practice and procedure, which shall have the force and effect of law."). "The exclusive authority to define, regulate and control the practice of law in West Virginia is vested in the Su-

preme Court of Appeals." Syl. pt. 1, *State ex rel. Askin v. Dostert,* 170 W.Va. 562, 295 S.E.2d 271 (1982). *See also* Syl., *Christie v. W. Va. Health Care Cost Review Authority,* 176 W.Va. 420, 345 S.E.2d 22 (1986). In an effort to effectively and efficiently carry out this Court's constitutional obligation to the practice of law in this state, we adopted by order approved May 25, 1994 (effective July 1, 1994), the Rules of Lawyer Disciplinary Procedure (hereinafter the "Rules of LDP") to supersede the provisions of Article VI of the By–Laws of the West Virginia State Bar. The Rules of LDP establish general guidelines for conducting attorney disciplinary proceedings. In looking at this Court's prior decisions under the Rules of LDP, it is clear that we have not always been precise in our terminology and in explaining the procedural steps involved with a prosecution under the Rules of LDP. Therefore, it becomes important to clarify the relationship and role of the various parties under the Rules of LDP.

**1. *The Lawyer Disciplinary Board.*** The general authority of the Board is set out in Rule 1.11 of the Rules of LDP.[9] Pursuant to Rule 1 of the Rules of LDP, this Court created the Board "to investigate complaints of violations of the Rules of Professional Conduct ... and to take appropriate action in accordance with the provisions of the Rules of Lawyer Disciplinary Procedure."[10] The Board began as the Committee on Legal Ethics of the West Virginia State Bar. "[A]s an administrative arm of the Supreme Court of Appeals, [the Board] is subject to the exclusive control and supervision of the Supreme Court of Appeals, including the approval of all regulatory and adjudicatory activities regarding attorney disciplinary proceedings." *Daily Gazette Co., Inc. v. Committee on Legal Ethics,* 174 W.Va. 359, 362, 326 S.E.2d 705, 709 (1984). "In the exercise of this plenary authority to regulate and control the practice of law, we have delegated to the [Board] certain administrative, investigative, and adjudicatory functions." *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 288, 452 S.E.2d 377, 379 (1994). The delegation of certain administrative, investigative and adjudicatory functions is a method of assisting the Court.

While the findings and recommendations of the Board are generally accorded great weight by the Court, they are viewed as only advisory. The findings and recommendations are not binding upon this Court. The Court retains the power to approve or disapprove any regulation or practice adopted by the Board, inquire into the merits of any disciplinary proceeding, and to take any action the Court sees fit in such matters. The authority of this Court in lawyer disciplinary matters is consistent with that possessed by other state high courts. *See People v. Varallo,* 913 P.2d 1 (Colo.1996); *In re Gerard,* 634 N.E.2d 51 (Ind.1994); *In re Blank,* 145 Ill.2d 534, 165 Ill.Dec. 709, 585 N.E.2d 105 (1991); *Barnard v. Utah State Bar,* 804 P.2d 526 (Utah 1991); *In re Berk,* 157 Vt. 524, 602 A.2d 946 (1991); *In re Curran,* 115 Wash.2d 747, 801 P.2d 962 (1990); *Brown v. Oregon State Bar,* 293 Or. 446, 648 P.2d 1289 (1982); *Cincinnati Bar*

---

9. Rule 1.11 states:

The Board shall have the authority to (1) propose rules of procedure for lawyer disciplinary proceedings for promulgation by the Supreme Court of Appeals; (2) file an annual report with the Supreme Court of Appeals on the operation of the lawyer disciplinary system; (3) inform the public about the existence and operation of the lawyer disciplinary system, the filing of formal charges, and the discipline imposed or recommended on formal charges; (4) delegate, in its discretion, to the Chairperson or Vice–Chairperson, the authority to act for the Board on administrative and procedural matters; (5) nominate, for selection by the Supreme Court of Appeals, candidates for the position of Chief Lawyer Disciplinary Counsel; (6) appoint an Investigative Panel of seven members, at least two of whom must be members of the public, and designate the Chairperson for the Investigative Panel; (7) appoint a Hearing Panel of twelve members, at least four of whom must be members of the public, and designate a Chairperson for each Hearing Panel; (8) appoint Hearing Panel Subcommittees of three members each, two of whom must be members of The West Virginia State Bar and one of whom must be a member of the public; (9) issue formal ethics opinions; and (10) engage in such other activities related to lawyer discipline as it deems appropriate.

10. The Board is comprised of 19 members, 13 of whom must be active members of the bar and 6 of whom must be members of the public.

*Association v. Fennell,* 63 Ohio St.2d 113, 406 N.E.2d 1129 (1980); *Mendicino v. Whitchurch,* 565 P.2d 460 (Wyo.1977); *Gipson v. New Jersey Supreme Court,* 416 F.Supp. 1129 (D.N.J.), aff'd. 558 F.2d 701 (3d Cir. 1977); *Simpson v. Alabama State Bar,* 294 Ala. 52, 311 So.2d 307 (1975); *In re Bowen,* 95 Idaho 334, 508 P.2d 1240 (1973); *Florida Bar v. Massfeller,* 170 So.2d 834 (Fla.1964); *Brotsky v. California State Bar,* 57 Cal.2d 287, 19 Cal.Rptr. 153, 368 P.2d 697 (1962).

## 2. *The Office of Disciplinary Counsel.*

The ODC was established by the Supreme

11. ODC was created pursuant to Rule 4 of the Rules of LDP, which provides:

The Supreme Court of Appeals does hereby establish an Office of Disciplinary Counsel to prosecute violations of the Code of Judicial Conduct and the Rules of Professional Conduct. The Office of Disciplinary Counsel shall consist of separate Lawyer Disciplinary Counsel and Judicial Disciplinary Counsel. Lawyer Disciplinary Counsel shall be primarily responsible for the investigation of complaints of ethical violations by lawyers. Judicial Disciplinary Counsel shall be primarily responsible for the investigation of complaints of ethical violations by judges. Notwithstanding these primary responsibilities, when circumstances warrant, Lawyer Disciplinary Counsel shall have the authority to investigate and prosecute complaints of ethical violations by judges and Judicial Disciplinary Counsel shall have the authority to investigate and prosecute complaints of ethical violations by lawyers.

12. Rule 4.4 states:

Disciplinary Counsel shall perform all prosecutorial functions and have the authority to (1) receive complaints concerning violations of the Code of Judicial Conduct and the Rules of Professional Conduct; (2) review all complaints concerning violations of the Code of Judicial Conduct and the Rules of Professional Conduct; (3) investigate information concerning violations of the Code of Judicial Conduct and the Rules of Professional Conduct; (4) prosecute violations of the Code of Judicial Conduct and Rules of Professional Conduct before the Lawyer Disciplinary Board, the Judicial Investigation Commission, the Judicial Hearing Board, and the Supreme Court of Appeals; (5) employ and supervise staff necessary for the performance of prosecutorial functions; (6) notify promptly the complainant and the respondent of the disposition of each matter; (7) notify each jurisdiction in which a lawyer is admitted of the transfer to or from disability, reinstatement, or any public discipline imposed in the State of West Virginia; (8) seek reciprocal discipline when informed of any public discipline imposed in any other

Court of Appeals to prosecute violations of the Rules of Professional Conduct.[11] The authority of ODC is set out in Rule 4.4 of the Rules of LDP.[12] It is provided in Rule 2.4 of the Rules of LDP, that ODC "shall investigate all complaints of violation of the Rules of Professional Conduct made against lawyers[,] . . . shall also conduct such investigations as may be directed by the Investigative Panel [and] . . . may initiate investigations on his or her own."[13] Rule 2.5 obligates ODC to inform an attorney in writing of the nature of a complaint against him/her, prior to filing a report with the Investigative Panel.[14]

jurisdiction; (9) forward a certified copy of the order or judgment of conviction in each jurisdiction in which a lawyer is admitted when the lawyer is convicted of crime reflecting adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (10) maintain permanent records of discipline and disability matters and compile statistics to aid in the administration of the system, including but not limited to a single log of all complaints received, investigative files, statistical summaries of docket processing and case dispositions, transcripts of all proceedings or audiotapes if not transcribed, and other records as the Lawyer Disciplinary Board, Judicial Investigation Commission, Judicial Hearing Board or the Supreme Court of Appeals require to be maintained; and (11) undertake, pursuant to information provided by the Lawyer Disciplinary Board, Judicial Investigation Commission or the Supreme Court of Appeals, whatever investigations are deemed appropriate.

13. Rule 2.4 states in full:

The Office of Disciplinary Counsel shall investigate all complaints of violation of the Rules of Professional Conduct made against lawyers. The Office of Disciplinary Counsel shall also conduct such investigations as may be directed by the Investigative Panel of the Lawyer Disciplinary Board. The Office of Disciplinary Counsel may initiate investigations on his or her own. The Office of Disciplinary Counsel may obtain from the Chairperson of the Investigative Panel or the Clerk of the Supreme Court of Appeals a subpoena for evidence and the testimony of witnesses and the production of documents. The Chairperson of the Investigative Panel or the Clerk of the Supreme Court of Appeals shall issue a subpoena requiring such person to appear before the Office of Disciplinary Counsel to produce all documents and give evidence on the matters in question. Any failure to obey such subpoena, may be punished by contempt.

14. Rule 2.5 states in full:

Prior to filing a report with an Investigative Panel, the Office of Disciplinary Counsel shall

ODC is required, pursuant to Rule 2.8, to file a written report with the Investigative Panel regarding each complaint it receives and investigation it conducts. The report by ODC must recommend whether it believes probable cause exists to formally charge an attorney with violating the Rules of Professional Conduct.[15]

### 3. The Investigative Panel.[16]

It is the function of the Investigative Panel of the Lawyer Disciplinary Board to determine whether probable cause exists to formally charge a lawyer with a violation of the Rules of Professional Conduct.[17] Upon the Investigative Panel's receipt of the report filed by the ODC, the Investigative Panel must file a written decision as to whether there is proba-

ble cause to formally charge the lawyer with a violation of the Rules of Professional Conduct, whether the matter should be investigated further by the ODC, or whether the matter should be referred for mediation in accordance with the Rules of Procedure for Court–Annexed Mediation. Should the Investigative Panel of the Lawyer Disciplinary Board determine probable cause does not exist to formally charge a lawyer with a violation of the Rules of Professional Conduct, the Investigative Panel is required to issue a brief explanatory statement supporting its decision to close the complaint. Should the Investigative Panel determine that probable cause does exist but formal discipline is not appropriate, the Investigative Panel must comply with Rule 2.9.[18] Fi-

---

notify the respondent involved in writing of the nature of the complaint. The respondent shall have ten days after the date of the written notice to file a written response to the complaint. The response shall be verified by the respondent.

15. Rule 2.8 states in full:

As to each complaint received and investigation conducted by the Office of Disciplinary Counsel, a written report shall be filed with the Investigative Panel. The report shall recommend whether the Office of Disciplinary Counsel believes there is probable cause to formally charge the lawyer with a violation of the Rules of Professional Conduct. The report shall include a copy of any written response by the lawyer, together with a list of documents, affidavits, or other material that has been collected or submitted in connection with the complaint or investigation.

16. Rule 1.11(6) provides that the Board shall "appoint an Investigative Panel of seven members, at least two of whom must be members of the public, and designate the Chairperson for the Investigative Panel." Rule 2.1 provides further that "[t]he Investigative Panel shall consist of seven members, with five members of The West Virginia State Bar and two members of the public." Finally, Rule 2.2 states that:

Four members of an Investigative Panel shall constitute a quorum. An Investigative Panel, however, shall act only with the concurrence of a majority of those present and voting. The Chairperson of the Board may appoint alternate members to an Investigative Panel as necessary to meet the requirements of this rule. No member of an Investigative Panel may participate as a member of a Hearing Panel in any case in which such member has served as a member of an Investigative Panel. Investigative Panels may deliberate and issue

decisions in person, by telephone conference, or by written correspondence.

17. Rule 2 provides that:

The Investigative Panel of the Lawyer Disciplinary Board shall determine whether probable cause exists to formally charge a lawyer with a violation of the Rules of Professional Conduct.

18. Rule 2.9 states:

(a) Within sixty days after the date of a report by the Office of Disciplinary Counsel, the Investigative Panel shall file a written decision regarding whether it believes there is probable cause to formally charge the lawyer with a violation of the Rules of Professional Conduct; whether the matter should be investigated further by the Office of Disciplinary Counsel; or whether the matter should be referred for mediation in accordance with the Rules of Procedure for Court–Annexed Mediation.

(b) When it has been determined that probable cause does not exist, the Investigative Panel shall issue a brief explanatory statement in support of its decision to close the complaint.

(c) When it has been determined that probable cause does exist, but that formal discipline is not appropriate under the circumstances, the Investigative Panel shall issue a written admonishment to the respondent, who has fourteen days after its receipt to object. The written admonishment shall be available to the public, but shall not be reported to any other jurisdiction in which the respondent is licensed to practice law. If the Office of Disciplinary Counsel or the respondent files a timely objection to the written admonishment, the Investigative Panel shall file a formal charge with the Clerk of the Supreme Court of Appeals. Admonishment shall not be administered if (1) the misconduct involves the misappropriation of funds; (2) the misconduct resulted or will likely result in substantial prejudice to a client

nally, when the Investigative Panel has determined that probable cause exists and that formal discipline is appropriate, it is the responsibility of the Investigative Panel to file a formal charge with the Clerk of the Supreme Court.

4. *The Hearing Panel Subcommittee.* The HPS is a component of the Hearing Panel. Rule 1.11(7) of the Rules of LDP states that the Board shall "appoint a Hearing Panel of twelve members[.]" From that Hearing Panel the Board is required under Rule 1.11(8) to "appoint Hearing Panel Subcommittees of three members each[.]" [19] As a general grant of authority to the Hearing Panel, Rule 3 provides "[t]he Hearing Panel of the Lawyer Disciplinary Board shall conduct hearings and make findings of fact, conclusions of law, and recommendations of lawyer discipline to the Supreme Court of Appeals on formal charges filed by the Investigative Panel." Rule 3.3 grants specific authority to HPS to conduct hearings. Rule 3.3 states in full:

Unless the Hearing Panel Subcommittee, the Office of Disciplinary Counsel, and the respondent otherwise agree, hearings on formal charges shall be conducted by a Hearing Panel Subcommittee of the Law-

yer Disciplinary Board. The Hearing Panel Subcommittee, the Office of Disciplinary Counsel, and the respondent may agree to designate a hearing examiner for purposes of conducting a hearing.[20]

No provision in the Rules of Lawyer Disciplinary Procedure grants to the Hearing Panel Subcommittee of the Lawyer Disciplinary Board the explicit or implicit authority to dismiss outright a formal disciplinary charge brought against an attorney without holding an evidentiary hearing on the matter. The fact that, prior to a hearing, an attorney and ODC reach an agreement to request dismissal of charges or the fact that HPS recommends the dismissal of charges with or without objection by ODC, does not dispense with the evidentiary hearing requirement set forth in Rule 3.3. The reason this Court, in promulgating the Rules of LDP, did not grant such authority to HPS is simple. Should the Supreme Court reject the recommendation of dismissal of a formal charge by the Hearing Panel Subcommittee of the Lawyer Disciplinary Board, an evidentiary record is necessary for this Court to determine the proper disposition of the charges.[21] Where no evidentiary record is made on a formal charge recommended for

---

or other person; (3) the respondent has been disciplined in the last three years; (4) the misconduct is of the same nature as misconduct for which the respondent has been disciplined in the last five years; (5) the misconduct involves dishonesty, deceit, fraud, or misrepresentation by the respondent; (6) the misconduct constitutes a crime that adversely reflects on the respondent's honesty, trustworthiness, or fitness as a lawyer; or (7) the misconduct is part of a pattern of similar misconduct.

(d) When it has been determined that probable cause does exist, and that formal discipline is appropriate, the Investigative Panel shall file a formal charge with the Clerk of the Supreme Court of Appeals. After the filing and service of formal charges, all documents filed with the Clerk of the Supreme Court of Appeals and the Hearing Panel Subcommittee shall be available to the public.

19. *See also* Rule 3.1, which states:

The Hearing Panel shall consist of twelve members, with eight members of The West Virginia State Bar and four members of the public. The Hearing Panel shall be divided into four Hearing Panel Subcommittees, with

two members of The West Virginia State Bar and one member of the public.

20. If HPS, ODC and a formally charged attorney agree that a hearing examiner conduct the hearing, Rule 3.10 is triggered, and it provides in relevant part:

If the hearing was conducted by agreement before a hearing examiner, the examiner shall file a written recommended decision with the Hearing Panel Subcommittee within thirty days after the final hearing or the filing of posthearing briefs, which in no case shall be permitted more than thirty days after the final hearing, whichever comes later, and the Hearing Panel Subcommittee shall then, within thirty days after the date of the examiner's recommended decision, file its written recommended decision with the Clerk of the Supreme Court of Appeals.

21. By evidentiary record we mean two things. First, any evidence supporting a recommendation to dismiss the formal charges must be presented at a hearing before the HPS. Second, findings of fact and conclusions of law which support the proposal of dismissal must be made by the HPS.

dismissal by the HPS,[22] and such dismissal is rejected by this Court, we will remand the matter to the HPS for the making of an evidentiary record.[23] Should the Court determine that other charges not recommended for dismissal by HPS were proven based upon an evidentiary hearing held before the HPS, this Court may, in its discretion, suspend imposition of sanctions until the case is returned to this Court from remand.

▮▮▮▮ The next issue that requires clarification concerns the authority of HPS to dismiss formal charges after an actual evidentiary hearing. Rule 3.10 of the Rules of LDP states that "[w]ithin sixty days after the final hearing ... the Hearing Panel Subcommittee [of the Lawyer Disciplinary Board] shall file a written recommended decision with the Clerk of the Supreme Court of Appeals.... The decision shall contain findings of fact, conclusions of law, and a recommended disposition." Neither Rule 3.10 nor any other provision in the Rules of LDP explicitly or implicitly authorizes the HPS to *dismiss outright* a formal charge once an evidentiary hearing has been actually held. Rule 3.10 implicitly authorizes HPS to *recommend* to this Court dismissal of a formal charge after an evidentiary hearing. Any agreement between an attorney and ODC or HPS to dismiss a formal charge, upon which an evidentiary hearing was held, is merely a dispositional recommendation to this Court.[24] Moreover, Rule 3.12 specifically provides that where the parties consent to a recommended disposition of a charge, this "Court does not [have to] concur with the recommended disposition[.]" In syllabus point 3 of *Committee on Legal Ethics of West Virginia State Bar v. Douglas,* 179 W.Va. 490, 370 S.E.2d 325 (1988), we held that "[t]his Court may in

appropriate circumstances exercise its inherent supervisory power to review attorney disciplinary charges for which the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board] has not recommended discipline."

Having fully discussed the procedural framework within which we review disciplinary proceedings, we now must apply a de novo standard of review, with deference to findings of fact, based upon the adjudicatory record made before the HPS.

## B.

### *Misappropriation or Conversion of Trust Fund Monies*

The conduct charged in the instant proceeding involved the unauthorized use of trust funds. The misappropriation of client trust funds by an attorney is serious conduct. The term misappropriation can have various meanings. In fact, the misuse of another's funds is generally characterized as misappropriation or conversion. *Black's* defines misappropriation as "[t]he unauthorized, improper, or unlawful use of funds or other property for purposes other than that for which intended ... including not only stealing but also unauthorized temporary use for [the] lawyer's own purpose, whether or not he derives any gain or benefit therefrom." *Black's Law Dictionary* (6th ed.1990). *See In re Wilson,* 81 N.J. 451, 409 A.2d 1153, 1155 n. 1 (1979) (defining misappropriation as "any unauthorized use by the lawyer of client's funds entrusted to him including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom").

22. Rule 3.9 provides that:

 Hearings before a Hearing Panel Subcommittee of the Lawyer Disciplinary Board *shall* be recorded by stenographic, mechanical, or electronic means. Upon request, the lawyer shall be entitled, at the lawyer's expense, to a copy of a videotape, audiotape, or transcript of the hearing. (Emphasis added).

23. In a situation where ODC agrees to request dismissal of a charge because ODC failed to sustain its proof by clear and convincing evidence, ODC remains obligated to present its evidence at a hearing before HPS. The ultimate

decision regarding the formal charge must be made by this Court.

24. Pursuant to the former disciplinary procedures Article VI, § 17(a) of the By-Laws of the West Virginia State Bar expressly granted the Hearing Panel authority to dismiss a formal charge outright. The provision stated:

 If the Hearing Panel determines that the case does not merit the taking of disciplinary action, it shall record its findings of fact and conclusions of law and the case shall be dismissed.

Conversion is the unauthorized use of entrusted funds for the lawyer's own purpose. It includes temporary use. It also includes use that does not result in personal gain or benefit to the lawyer. *See In re Harrison*, 461 A.2d 1034 (D.C.1983). Courts have held that if a firm member converts entrusted funds, all partners may be held financially liable for the conversion. *See Husted v. Gwin*, 446 N.E.2d 1361 (Ind.Ct. App.1983). In addition to financial liability, the partners may face discipline for the conversion itself, as well as for failing to supervise the firm member who actually did the act. *See In re Pollack*, 142 A.D.2d 386, 536 N.Y.S.2d 437 (1989). Of course, the degree of culpability is relevant to punishment. *See In re Sykes*, 150 A.D.2d 126, 546 N.Y.S.2d 376 (1989).[25]

Most courts proceed from the general rule that absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment. *See Florida Bar v. McShirley*, 573 So.2d 807 (Fla.1991); *Maryland Attorney Grievance Commission v. Bakas*, 323 Md. 395, 593 A.2d 1087 (Md.1991); *State ex rel. Nebraska State Bar Association v. Veith*, 238 Neb. 239, 470 N.W.2d 549 (1991); *In re Konopka*, 126 N.J. 225, 596 A.2d 733 (1991); *In re Addams*, 579 A.2d 190 (D.C.1990); *Committee on Professional Ethics v. Brodsky*, 318 N.W.2d 180 (Iowa 1982); *State v. Freeman*, 229 Kan. 639, 629 P.2d 716 (1981); *Kentucky Bar Association v. Berry*, 626 S.W.2d 632 (Ky.1981); *In re Warnock*, 70 Wash.2d 457, 423 P.2d 929 (1967). *See also* Syl. Pt. 5, *Committee on Legal Ethics v. Pence*, 161 W.Va. 240, 240 S.E.2d 668 (1977) ("Detaining money collected in a professional or fiduciary capacity without bona fide claim coupled with acts of dishonesty, fraud, deceit or misrepresentation justify annulment of an attorney's license to practice law."); *Committee on Legal Ethics of the West Virginia State Bar v. Lambert*, 189 W.Va. 84, 428

S.E.2d 65 (1993) (per curiam) (attorney license annulled when he converted property of two clients to his own personal use); *Committee on Legal Ethics of the West Virginia State Bar v. Six*, 181 W.Va. 52, 380 S.E.2d 219 (1989) (conviction for embezzlement of client funds warranted annulment of license); *Committee on Legal Ethics of West Virginia State Bar v. White*, 176 W.Va. 753, 349 S.E.2d 919 (1986) (per curiam) (conversion of client trust funds warranted disbarment); *In re Hendricks*, 155 W.Va. 516, 185 S.E.2d 336 (1971) (per curiam) (detaining money collected in professional and fiduciary capacity without bona fide claim and acts of fraud and deceit justify annulment of license to practice).

The American Bar Association Model Standards for Imposing Lawyer Sanctions (hereinafter "ABA standards")[26] classify misappropriation offenses according to the level of intent and the level of the injury. The ABA standards are consistent with the general rule in finding disbarment appropriate in cases of knowing conversion with injury or potential injury to the owner of entrusted funds. Where there is little or no actual or potential injury to the owner of entrusted funds, and when the lawyer knows or should know he/she is dealing improperly with entrusted funds, the ABA standards suggest suspension. When the lawyer is merely negligent in dealing with entrusted funds, the ABA standards suggest reprimand or admonishment. *See generally* ABA/BNA Lawyers' Manual on Professional Conduct § 01:801 (1992).

Restitution is not a defense to misappropriation. *See In re Staab*, 785 S.W.2d 551 (Mo.1990); *In re Haupt*, 250 Ga. 422, 297 S.E.2d 284 (1982). *See also* Syl. Pt. 4, in part, *Committee on Legal Ethics of West Virginia State Bar v. Hess*, 186 W.Va. 514, 413 S.E.2d 169 (1991) ("The repayment

---

**25.** Another term closely associated with misappropriation and conversion is "commingling". The term commingling means mixing or blending funds so that their separate identity is lost. A lawyer must keep client or trust funds separate from his/her firm's funds. *See Black v. California State Bar*, 57 Cal.2d 219, 18 Cal.Rptr. 518, 368 P.2d 118 (1962). Unlike conversion, commingling may be found even though no funds are actually misused, and even though no client is deprived of the use of his/her money. *See In re Brown*, 310 S.C. 463, 427 S.E.2d 645 (1993).

**26.** The ABA Model Standards were adopted in 1986. They were amended in 1992.

of funds wrongfully held by an attorney does not negate a violation of a disciplinary rule."). However, restitution may be considered as a mitigating factor in the imposition of sanctions. *See In re Rubi,* 133 Ariz. 491, 652 P.2d 1014 (1982); *Matter of Miller,* 68 A.D.2d 544, 418 N.Y.S.2d 69 (1979); *Matter of Kumbera,* 91 Wash.2d 401, 588 P.2d 1167 (1979); *Louisiana State Bar Ass'n v. Philips,* 363 So.2d 667 (La.1978); *In re Wholey's Case,* 110 N.H. 449, 270 A.2d 609 (1970). *See also* Syl. Pt. 4, in part, *Hess* ("Any rule regarding mitigation of the disciplinary punishment because of restitution must be governed by the facts of the particular case."). For restitution to be accepted as a mitigating factor, it must be made promptly. *See Edwards v. California State Bar,* 52 Cal.3d 28, 276 Cal.Rptr. 153, 801 P.2d 396 (1990); *Florida Bar v. Schiller,* 537 So.2d 992 (Fla.1989); *In re Deragon,* 398 Mass. 127, 495 N.E.2d 831 (1986). *See also Committee on Legal Ethics of West Virginia State Bar v. Tatterson,* 173 W.Va. 613, 319 S.E.2d 381 (1984) (conversion of client's funds to attorney's own use warranted six-month suspension where there was voluntary restitution after complaint was filed). Where the restitution has been made after the commencement of disciplinary proceedings, or when made as a matter of expediency under the pressure of the threat of disciplinary proceedings, some courts have refused to consider it a mitigating factor. *See In re Lyons,* 15 Cal.3d 322, 124 Cal.Rptr. 171, 540 P.2d 11 (1975); *Simmons v. State Bar of California,* 70 Cal.2d 361, 74 Cal.Rptr. 915, 450 P.2d 291 (1969); *In re Staples,* 259 Or. 406, 486 P.2d 1281 (1971).

## C.

### *Recommendation That Rule 1.15(b) Was Violated*

■ Mr. Kupec was charged with converting the balance of $28,803.26 from the property sale to a use other than its intended purpose. ODC alleged that this conduct violated Rule 1.15(b), which states:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

"Rule 3.7 of the Rules of Lawyer Disciplinary Procedure ... requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995). HPS found that Mr. Kupec violated Rule 1.15(b) by converting money held in client trust to a business use. Mr. Kupec contends that the conduct alleged against him does not come within the restrictions of Rule 1.15(b) and that there was no evidence to support a violation of Rule 1.15(b). Mr. Kupec argues that Rule 1.15(b) does not address the conduct alleged against him as the evidence established clearly and convincingly that Mr. Kupec complied with Rule 1.15(b). We agree. The record supports Mr. Kupec's argument. Mr. Kupec notified and tendered to Judge White a check payable to the circuit court general receiver in the amount of $28,803.26. At the time of the attempted delivery, Mr. Kupec presented to the Court a full accounting outlining the property sale proceeds. Judge White refused to accept the monies and documents based upon a belief that the prior judicially approved attorney fee award was too high. Based upon these facts, Mr. Kupec did not violate Rule 1.15(b).

## D.

### *Recommendation To Dismiss Rule 8.4(c) Charge*

■ Mr. Kupec was charged with violating Rule 8.4(c) by converting money held in trust to business use. Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." In view of the evidence submitted on this charge, HPS found that the ODC failed to prove by clear and convincing evidence that Mr. Kupec's conversion of money held in

trust established dishonesty, fraud, deceit or misrepresentation. As a result of HPS's finding, HPS dismissed the charge alleging violations of Rule 8.4(c). It was error for HPS to dismiss the charge involving Rule 8.4(c). The HPS has no authority to dismiss outright any formal charge against an attorney. Consistent with Rule 3.10 of the Rules of LDP, the HPS is empowered only to make recommendations to the court. As such, we treat the dismissal of Rule 8.4(c) as a recommendation to this Court.

 The Court strongly disagrees with HPS's findings and its recommendation regarding Rule 8.4(c). This Court stated in *Committee on Legal Ethics of West Virginia State Bar v. Hess,* 186 W.Va. 514, 517, 413 S.E.2d 169, 172 (1991), that "[i]f a lawyer converts [others'] monies to his or her own use without authorization, the attorney is subject to a disciplinary charge. Such conduct obviously reflects a dishonest and deceitful nature which violates the general precept that an attorney should avoid dishonesty or deceitful conduct." *Hess* quoted approvingly *Attorney Grievance Commission v. Ezrin,* 312 Md. 603, 541 A.2d 966 (1988), wherein the Supreme Court of Maryland held that: " 'Misappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishonesty and will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction.' " *Hess,* 186 W.Va. at 517, 413 S.E.2d at 172. In *Hess* the attorney converted monies belonging to his firm. We found such conduct constituted dishonesty and deceit and was therefore a violation of the rules of ethics. This Court suspended the attorney's license for a period of four years.

Mr. Kupec admitted that he and members of his firm raided the client trust account containing the $28,803.26 for the purpose of defraying the costs of the firm's other litigation. Mr. Kupec and HPS would have this Court fashion a substantive distinction between unauthorized conversion of money for one's personal use and unauthorized conversion of money to pay litigation expenses of one's firm. According to Mr. Kupec and HPS, Rule 8.4(c) applies to only the first example. They suggest that the second situation is not a matter contemplated by Rule 8.4(c). We reject such an interpretation and application of Rule 8.4(c). "A lawyer may not use a client's or third party's funds for his own or his law firm's purposes. Such misuse is conversion. Conversion occurs when a lawyer intentionally takes or uses client [or third party] funds for his own or the law firm's use." ABA/BNA Lawyers' Manual on Professional Conduct § 45:501 (1993). The evidence was clear and convincing that Mr. Kupec converted large portions of the $28,803.26 for use by his firm. This matter was not discovered until after the investigation launched by Judge White. Mr. Kupec's conduct was proven by clear and convincing evidence to be dishonest and deceitful. Therefore, Mr. Kupec's conduct violated Rule 8.4(c).

### E.

### *Recommendation To Dismiss Rule 8.4(d) Charge*

 Mr. Kupec was also charged with violating Rule 8.4(d) through his conversion of money held in trust. Rule 8.4(d) states that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." HPS found, in view of all the evidence submitted, that ODC failed to prove by clear and convincing evidence that Mr. Kupec's conversion of money held in trust established a violation of Rule 8.4(d). Therefore, HPS dismissed the Rule 8.4(d) charge. As HPS has no authority to dismiss any formal charge, we treat the dismissal as a recommendation.

Courts that have defined the scope of "conduct that is prejudicial to the administration of justice" have concluded that conduct which interferes with civil or criminal litigation processes comes within the meaning of "conduct that is prejudicial to the administration of justice." *See In re Tripp,* 493 N.E.2d 458 (Ind.1986); *The Florida Bar v. Johnson,* 490 So.2d 47 (Fla.1986); *In re Reback,* 487 A.2d 235 (D.C.1985); *North Carolina State Bar v. Wilson,* 74 N.C.App. 777, 330 S.E.2d 280 (1985); *In re Heilprin,* 123 Wis.2d 394, 367 N.W.2d 217 (1985); *In re Riley,* 142 Ariz. 604, 691 P.2d 695 (1984); *In re Walker,* 293

Or. 297, 647 P.2d 468 (1982); *In re Hinds,* 90 N.J. 604, 449 A.2d 483 (1982).

■ "There also appears to be general agreement that the 'prejudicial to the administration of justice' standard contained in [Rule 8.4(d) ] is not unconstitutionally vague. This is because the standard is considered in light of the traditions of the legal profession and its established practices." *Committee on Legal Ethics of West Virginia State Bar v. Douglas,* 179 W.Va. 490, 370 S.E.2d 325, 328–329 (1988). Citing, *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). The rule was written by and for lawyers. The language of a rule setting guidelines for members of the bar need not meet the precise standards of clarity that might be required of rules of conduct for laypersons. *See State v. Martindale,* 215 Kan. 667, 527 P.2d 703 (1974). In *Committee on Legal Ethics of The West Virginia State Bar v. Craig,* 187 W.Va. 14, 415 S.E.2d 255 (1992), where this Court suspended the license of an attorney for three years, we found that giving false information to a grand jury constituted conduct prejudicial to the administration of justice. *See also Committee on Legal Ethics of the West Virginia State Bar v. Moore,* 186 W.Va. 127, 411 S.E.2d 452 (1991); *Committee on Legal Ethics of West Virginia State Bar v. Farber,* 185 W.Va. 522, 408 S.E.2d 274 (1991); *Committee on Legal Ethics of West Virginia State Bar v. Folio,* 184 W.Va. 503, 401 S.E.2d 248 (1990).

In view of the broad language of Rule 8.4(d), some courts have found attorney misconduct in matters only tangentially related to litigation constituted conduct prejudicial to the administration of justice. *See In re Wood,* 489 N.E.2d 1189 (Ind.1986) (offering to reduce legal fee if client would engage in sex); *Attorney Grievance Commission of Maryland v. Gallagher,* 306 Md. 107, 507 A.2d 625 (1986) (mishandling and neglecting

estate); *In re Discipline of Hoffman,* 379 N.W.2d 514 (Minn.1986) (charging and collecting illegal fees); *In re Frith,* 103 N.M. 792, 715 P.2d 65 (1986) (implying criminal charges would be brought against debtor to gain advantage in pending civil litigation); *Akron Bar Association v. Thorpe,* 23 Ohio St.3d 210, 492 N.E.2d 162 (1986) (neglecting legal matter); *In re Borsher,* 93 A.D.2d 322, 461 N.Y.S.2d 802 (1983) (misappropriation of client funds); *The Florida Bar v. Snow,* 436 So.2d 48 (Fla.1983) (taping phone conversations with adverse party by means of false representations); *Committee on Professional Ethics v. Hurd,* 325 N.W.2d 386 (Iowa 1982) (altering court document); *People v. Kane,* 638 P.2d 253 (Colo.1981) (failure to appear at contempt hearing on charge of failing to pay child support); *In re Howe,* 257 N.W.2d 420 (N.D.1977) (false statements to bar admission authorities).

We believe that use of client trust funds for payment of a law firm's unrelated litigation expenses is conduct that is prejudicial to the administration of justice. We believe our holding to be a reasonable interpretation of Rule 8.4(d), and Kupec's conduct is encompassed by the provision of Rule 8.4(d).

In the instant proceeding, the evidence in this case established by clear and convincing evidence that Mr. Kupec misappropriated funds held in trust by him, by using those funds to pay his firm's unrelated litigation expenses. Therefore, Mr. Kupec's conduct violated Rule 8.4(d).

### F.

### *Disposition of Remaining Charges*

The Statement of Charges filed against Mr. Kupec alleged that he violated Rule 1.3,[27] and former rules DR 1–102(A)(5)[28] and DR 6–101(A)(3)[29]. The findings submitted by HPS indicate that these three charges were initially dismissed, by order of the HPS

27. Rule 1.3 provides:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

28. Former rule DR 1–102(A)(5) provides:

> A lawyer shall not … [e]ngage in conduct that is prejudicial to the administration of justice.

29. Former rule DR 6–101(A)(3) provides:
> A lawyer shall not … neglect a legal matter entrusted to him.

chairperson on July 22, 1996. There is no record of any hearing before the HPS relating to the Rule 1.3, DR 1–102(A)(5) and DR 6–101(A)(3) charges pursuant to Rule 3.3 of the Rules of LDP.

This opinion makes clear that all formal charges *must* be subjected to an evidentiary hearing and that findings of fact and conclusions of law *must* be filed with respect to the recommended disposition of *every* formal charge. · HPS failed to comply with the requirements of this Court as outlined in the Rules of LDP. Neither ODC nor Mr. Kupec have been given an opportunity to develop a record on these three charges. Therefore, this Court must reject the recommendation to dismiss charges under Rule 1.3, DR 1–102(A)(5) and DR 6–101(A)(3). This case is remanded on those charges. An evidentiary hearing must be held, a record made, and adequate findings of fact and conclusions of law filed with this Court before this Court considers recommendations on the three charges in question.[30]

 HPS further dismissed charges alleging that Mr. Kupec had violated Rules 8.4(b) and 3.3(a)(1). We do find that the evidence was insufficient to establish by clear and convincing evidence a violation of Rule 8.4(b) ("It is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects") and Rule 3.3(a)(1) ("A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal"). We therefore adopt HPS's recommendation to dismiss the latter two charges.

## IV.

### CONCLUSION

We have determined that ODC proved by clear and convincing evidence that Mr. Kupec violated Rule 8.4(c) and Rule 8.4(d) by converting trust funds to purposes that were not

authorized. However, we hold in abeyance determination and imposition of a sanction for those violations until this case is returned from remand. We have determined that HPS improperly dismissed charges under Rule 1.3, DR 1–102(A)(5) and DR 6–101(A)(3). We therefore remand those three charges to HPS [31] to conduct a hearing thereon consistent with this opinion. On remand, the only issues for which HPS has jurisdiction are the alleged violations of Rule 1.3, DR 1–102(A)(5) and DR 6–101(A)(3). Remand is not an opportunity to relitigate the other charges which have been conclusively decided by this Court. HPS shall file its required documents from that hearing with the Clerk of this Court within sixty (60) days from the date this opinion is filed. When HPS has filed its recommended decision, Mr. Kupec and ODC shall proceed as outlined in Rule 3.11, 3.12, and 3.13 of the Rules of LDP.

Imposition of Sanction Held in Abeyance Pending Return from Remand; Remand with Directions.

---

**30.** While we reject the recommendation of dismissal, this does not mean that HPS is prohibited from making such a recommendation when this case is returned to this Court. Our concern is having an adequate record with which to review the recommendation.

**31.** We direct the Clerk of the Supreme Court to forward, by certified mail, a copy of this opinion to each member of the HPS that presided over this matter.