# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2020 Term

**FILED**

**October 16, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-0879

**LAWYER DISCIPLINARY BOARD,**
Petitioner

**V.**

**E. LAVOYD MORGAN, JR.,**
**A Member of the West Virginia State Bar,**
**Respondent**

_____

**Lawyer Disciplinary Proceedings**
**No. 17-05-329**
**No. 17-05-523**
**No. 17-02-554**
**No. 17-05-574**
**No. 18-03-081**
**No. 18-05-236**
**No. 18-05-240**
**No. 18-05-246**
**No. 18-05-268**
**No. 18-05-276**
**No. 18-05-282**
**No. 18-05-284**
**No. 18-05-304**
**No. 18-05-312**
**No. 18-05-313**
**No. 18-05-314**
**No. 18-05-343**
**No. 18-05-370**
**No. 18-05-418**
**No. 18-05-490**
**No. 19-03-135**
**No. 19-05-152**

**LAW LICENSE ANNULLED AND OTHER SANCTIONS IMPOSED**
_____

**Submitted: September 2, 2020**
**Filed: October 16, 2020**

Rachael L. Fletcher Cipoletti
Chief Lawyer Disciplinary Counsel
Jessica Donahue Rhodes
Lawyer Disciplinary Counsel
Office of Lawyer Disciplinary Counsel
Charleston, West Virginia
Attorneys for the Petitioner

Lonnie C. Simmons
DIPIERO SIMMONS MCGINLEY &
BASTRESS, PLLC
Charleston, West Virginia
Attorney for the Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syllabus point 3, *Committee on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

2.      "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows:  'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors:  (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'"  Syllabus point 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998).

3. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syllabus point 4, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

4. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syllabus point 3, *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003).

5. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus point 3, *Committee on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

**Jenkins, Justice:**

This lawyer disciplinary proceeding against E. Lavoyd Morgan ("Mr. Morgan") was brought to this Court by the Office of Disciplinary Counsel ("ODC") on behalf of the Lawyer Disciplinary Board ("LDB"). The Hearing Panel Subcommittee ("HPS") of the LDB recommended the following disposition in its report to this Court: that Mr. Morgan's license to practice law be annulled; that Mr. Morgan refund monies to specified clients; that Mr. Morgan comply with the mandates of Rule 3.28[1] of the West

---

[1] Rule 3.28 states, in full:

(a) A disbarred or suspended lawyer shall promptly notify by registered or certified mail, return receipt requested, or by first-class mail with the prior consent of the Office of Disciplinary Counsel, all clients being represented in pending matters, other than litigated or administrative matters or proceedings pending in any court of agency, of the lawyer's inability to act as a lawyer after the effective date of disbarment or suspension and shall advise said clients to seek legal advice elsewhere. Failure of a disbarred or suspended lawyer to notify all clients of his or her inability to act as a lawyer shall constitute an aggravating factor in any subsequent disciplinary proceeding.

(b) A disbarred or suspended lawyer shall promptly notify by registered or certified mail, return receipt requested, or by first-class mail with the prior consent of the Office of Disciplinary Counsel, each of the lawyer's clients who is involved in litigated or administrative matters or proceedings pending, of the lawyer's inability to act as a lawyer after the effective date of disbarment or suspension and shall advise said client to promptly substitute another lawyer in his or her place. In the event the client does not obtain substitute counsel before the effective date of the disbarment or suspension, it shall be the responsibility of the disbarred or suspended lawyer to move pro se in the court or agency in which the proceeding is pending for leave to withdraw as counsel. The notice to be given to the

1

Virginia Rules of Lawyer Disciplinary Procedure unless he has submitted such as part of his immediate suspension in Case No. 19-0885;[2] and that he pay the costs of these proceedings pursuant to Rule 3.15[3] of the West Virginia Rules of Lawyer Disciplinary

---

lawyer for any adverse party shall state the place of residence of the client of the disbarred or suspended lawyer.

(c) The disbarred or suspended lawyer, after entry of the disbarment or suspension order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature. During the period from the entry date of the order to its effective date, however, the lawyer may wind up and complete, on behalf of any client, all matters which were pending on the entry date. Within twenty days after the effective date of the disbarment or suspension order, the lawyer shall file under seal with the Supreme Court of Appeals an affidavit showing (1) the names of each client being represented in pending matters who were notified pursuant to subsections (a) and (b); (2) a copy of each letter of notification which was sent; (3) a list of fees and expenses paid by each client and whether escrowed funds have been or need to be reimbursed; and (4) an accounting of all trust money held by the lawyer on the date the disbarment or suspension order was issued. Such affidavit shall also set forth the residence or other address of the disbarred or suspended lawyer where communications may thereafter be directed and a list of all other courts and jurisdictions in which the disbarred or suspended lawyer is admitted to practice. A copy of this report shall also be filed with the Office of Disciplinary Counsel.

[2] *Office of Disc. Counsel v. Morgan*, 242 W. Va. 667, 839 S.E.2d 145 (2020).

[3] Rule 3.15 states, in full:

A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service;

Procedure. Thereafter, the LDB submitted its consent to the recommendation and Mr. Morgan filed his objection. Upon careful review of the record submitted, the parties' briefs and oral arguments, and the relevant law, this Court agrees with the recommendations of the HPS, and finds that the recommended sanctions are warranted.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Morgan is a practicing attorney in Lewisburg, West Virginia. He was admitted to the West Virginia State Bar on October 2, 1995, having passed the bar exam. As such, Mr. Morgan is subject to the disciplinary jurisdiction of this Court and its properly constituted LDB.

#### A. Count I—Complaint of the Office of Lawyer Disciplinary Counsel

The ODC obtained information that Mr. Morgan had eighteen days of billing in excess of eighteen hours a day submitted for payments from the Public Defender Services ("Public Defender"). Specifically, the times and days were listed as follows:

---

(6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the panel or the Court finds the reimbursement will pose an undue hardship on the lawyer. Willful failure to reimburse the Board may be punished as contempt of the Court.

| Date | Number of Hours Submitted to PDS |
|------|------|
| 2/22/16 | 18.6 |
| 3/22/16 | 19.1 |
| 5/2/16 | 22.8 |
| 5/6/16 | 18.3 |
| 5/23/16 | 22.4 |
| 7/6/16 | 18.5 |
| 7/12/16 | 20.2 |
| 7/26/16 | 27.0 |
| 8/4/16 | 18.3 |
| 8/9/16 | 23.7 |
| 8/17/16 | 20.3 |
| 8/30/16 | 20.4 |
| 9/2/16 | 26.9 |
| 9/26/16 | 18.6 |
| 9/28/16 | 19.2 |
| 10/17/16 | 21.8 |
| 12/13/16 | 20.1 |
| 1/3/17 | 20.2 |

Mr. Morgan responded that some of this time was work he would perform on the weekends which was then billed to a weekday. Further, he noted that some of the time was "reconstructed," and that he had actually underbilled many of his cases. Mr. Morgan asserted that any billing errors were due to misidentifications by the billing attorney and clerical errors on duplicate entries.

After Mr. Morgan corrected some of the billing entries, the Public Defender provided information that showed three days still consisted of eighteen hours of services billed, and two days were between fifteen and eighteen hours of billed services. Moreover, one day showed a billing of nearly twenty-nine hours for that day—which is impossible

4

considering there are only twenty-four hours in a day. Upon additional information provided by the Public Defender, the ODC discovered that Mr. Morgan had sixteen more days of billing eighteen or more hours. When questioned once again about the excessive billing, Mr. Morgan claimed that some of the time was for work completed by an associate, and he admitted to overbilling for approximately five and a half hours. When asked by the ODC to address this excessive time, Mr. Morgan stated that the time was for weekends and other days were submitted for the wrong dates. Regarding his high hours billed for weekends, Mr. Morgan stated that he was required to work weekends to handle follow-up work made necessary by his weekday schedule. Two of Mr. Morgan's former employees provided statements that his billings to the Public Defender were incorrect, and that he rarely worked on the weekends. By the time the Public Defender was finished sending information to the ODC, there were thirty-eight days with eighteen hours or more of billed services.

Mr. Morgan was charged with providing false information to the tribunal on his billings in violation of Rule 3.3(a)(1);[4] providing improper and unsubstantiated billings

---

[4] Rule 3.3 of the West Virginia Rules of Professional Conduct states: "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

in violation of Rules 1.5(a),[5] 8.4(c),[6] and 8.4(d);[7] failing to make sure his staff's conduct was in line with the rules in violation of Rule 5.3;[8] and making false statements about his Public Defender work in violation of Rule 8.1(a).[9]

---

[5] Rule 1.5 of the West Virginia Rules of Professional Conduct states:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[6] Rule 8.4(c) of the West Virginia Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

6

---

[7] Rule 8.4(d) of the West Virginia Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."

[8] Rule 5.3 of the West Virginia Rules of Professional Conduct states:

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

[9] According to Rule 8.1(a) of the West Virginia Rules of Professional Conduct, "[a]n applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not . . . knowingly make a false statement of material fact."

7

### B. Count II—Complaint of Travis R. Norwood

Mr. Norwood retained Mr. Morgan for representation in multiple criminal cases, and in turn, paid Mr. Morgan an $8,000.00 retainer fee. Mr. Norwood alleged that Mr. Morgan failed to properly represent him, and as such, he terminated Mr. Morgan as his counsel. Upon his termination, Mr. Morgan failed to provide the client file to Mr. Norwood, and failed to refund the unearned portion of his retainer fee. A former employee of Mr. Morgan provided a statement averring that Mr. Morgan falsified the invoice for his work in Mr. Norwood's case. A review of Mr. Morgan's IOLTA account did not show a deposit of the $8,000.00 retainer fee when it was paid, and two months later the IOLTA account had a negative balance. Mr. Morgan also failed to respond to two letters from Disciplinary Counsel.

Mr. Morgan was charged with not having a written fee agreement in violation of Rule 1.5(b);[10] failing to provide the client file and unearned fees in violation of Rule

---

[10] Under Rule 1.5(b) of the West Virginia Rules of Professional Conduct,

> [t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client in writing.

1.16(d);[11] failing to hold client funds in an account designated as a "client's trust account" and failing to keep complete records of the funds paid to him in violation or Rule 1.15(a);[12] failing to place unearned fees into a client trust account and leaving unearned fees in his account in violation of Rule 1.15(c);[13] misrepresenting the case to Mr. Norwood and

[11] Rule 1.16(d) of the West Virginia Rules of Professional Conduct provides that

> [u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[12] Rule 1.15(a) of the West Virginia Rules of Professional Conduct provides:

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Such separate accounts must comply with State Bar Administrative Rule 10 with regard to overdraft reporting. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

[13] Rule 1.15(c) of the West Virginia Rules of Professional Conduct states that "[a] lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

misappropriating and converting client funds in violation of Rules 8.4(c) and 8.4(d); providing false information to the ODC about the accounting in violation of Rule 8.1(a); and failing to timely respond to the ODC in violation of Rule 8.1(b).[14]

### C. Count III—Complaint of Lori Ann McKinney

Lori Ann McKinney hired Mr. Morgan to represent her husband in a criminal case. She alleged that Mr. Morgan failed to communicate with them and failed to properly handle the case. Ms. McKinney also sought Mr. Morgan's representation in a medical malpractice case, which he allegedly did not pursue and never told the client that he was not going to pursue. Mr. Morgan is charged with failing to act diligently, failing to expedite both cases, failing to communicate with his clients about both cases, failing to keep records

---

[14] According to Rule 8.1(b) of the West Virginia Rules of Professional Conduct,

> [a]n applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> . . . .
>
> fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

of the funds paid to him, and failing to provide the client file. He is accused of violating Rules 1.3,[15] 1.4(b),[16] 1.15(a), 1.16(d), 3.2,[17] 8.4(c) and 8.4(d).

### D. Count IV—Complaint of W.T.

Mr. Morgan represented W.T.'s granddaughter in a family court matter. According to the granddaughter, she saw Mr. Morgan only at the initial consultation and at two hearings. Once the representation ended, he never provided her with the client file. Further, a review of the IOLTA account was unclear as to when or if the retainer was deposited; however, at the end of the next month, the IOLTA account had a negative balance. Mr. Morgan also failed to respond to two letters from the ODC.

Mr. Morgan was charged with not having a written fee agreement in violation of Rule 1.5(b); failing to hold client funds in an account designated as a "client's trust account" and failing to keep complete records of the funds paid to him in violation of Rule 1.15(a); failing to place unearned fees in a trust account and leaving earned fees in his own trust account in violation of Rule 1.15(c); failing to provide the client file and unearned

---

[15] Rule 1.3 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[16] Rule 1.4(b) of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[17] Rule 3.2 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client."

fees in violation of Rule 1.16(d); misappropriating and converting client funds in violation of Rules 8.4(c) and 8.4(d); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### E. Count V—Complaint of Denney W. Bostic

Mr. Bostic is a former employee of Mr. Morgan. He alleged that Mr. Morgan withheld money from his paycheck for taxes and insurance but did not pay those funds to the proper agencies. He also alleged that Mr. Morgan wrote him a worthless check for his wages. Additionally, Mr. Bostic stated that Mr. Morgan's law firm was operating under a false name—the law firm name is "E. Lavoyd Morgan, Jr. and Associates," but there were not associates at the firm. Multiple other former employees attested that there were no associate attorneys working at the firm.

Mr. Morgan was charged with failing to hold client funds in an account designated as a "client's trust account" in violation of Rule 1.15(a); failing to place unearned fees in a trust account in violation of Rule 1.15(c); using "and Associates" in the name of his firm when he was the only attorney in violation of Rule 7.5;[18] failing to timely

---

[18] Rule 7.5 of the West Virginia Rules of Professional Conduct states:

> (a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.

respond to the ODC in violation of Rule 8.1(b); failing to pay taxes and compensation premiums in violations of Rule 8.4(b);[19] and providing a worthless check in violation of Rules 8.4(b) and 8.4(d).

### F. Count VI—Complaint of E.L.

Mr. Morgan was retained by E.L. for representation in a property issue. E.L. claimed that she was unable to communicate with Mr. Morgan, and she never received an itemization or her client file. Moreover, a review of Mr. Morgan's IOLTA account was unclear as to when the retainer was deposited, but at the end of the next month, the IOLTA

---

(b) A law firm with offices in more than one jurisdiction may use the same name or other professional designation in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.

(c) The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.

(d) Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact.

[19] Rule 8.4(b) of the West Virginia Rules of Professional Conduct provides that "[i]t is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

account had a negative balance. Mr. Morgan also failed to respond to one letter from the ODC requiring it to send an additional letter.

Mr. Morgan was charged with not properly communicating with his client and failing to keep his client reasonably informed about the status of the case in violation of Rule 1.4(a);[20] failing to hold client funds in an account designated as a "client's trust account" and failing to keep complete records of the funds paid to him in violation of Rule 1.15(a); failing to provide a full accounting as requested by E.L. in violation of Rule

---

[20] Rule 1.4(a) of the West Virginia Rules of Professional Conduct provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

1.15(d);[21] failing to provide the client file and unearned fees in violation of Rule 1.16(d); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### G. Complaint VII—Complaint of Todd W. Clutter

Mr. Clutter paid Mr. Morgan for representation in four cases. Mr. Morgan failed to appear at hearings and failed to communicate with him. A review of Mr. Morgan's IOLTA account was unclear as to when the retainer was deposited, but at the end of July 2017, the account had a negative balance. Further, it was found that Mr. Morgan's operating account had Mr. Clutter's retainer checks deposited into it. Mr. Morgan also failed to respond to one letter from the ODC requiring it to send an additional letter.

Mr. Morgan was charged with not properly communicating with his client, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rule 1.4(a) and 1.4(b); failing to hold client funds in an account designated as a "client's trust account" in violation of Rule 1.15(a); failing to place unearned fees in a trust account and leaving

---

[21] Rule 1.15(d) of the West Virginia Rules of Professional Conduct states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

15

earned fees in his trust account in violation of Rule 1.15(c); failing to provide the client file and unearned fees in violation of Rule 1.16(d); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### H. Count VIII—Complaint of Lonnie Dennis Lilly

Mr. Lilly hired Mr. Morgan for representation in a vehicle accident case. He stated that Mr. Morgan failed to communicate with him. There was no written fee agreement in Mr. Lilly's client file. Further, a review of Mr. Morgan's IOLTA account was unclear as to when the retainer was deposited, but the account had a negative balance three months later, and Mr. Morgan failed to respond to two letters from the ODC requiring it to send additional letters.

Mr. Morgan was charged with not acting competently and diligently in handling the case in violation of Rules 1.1[22] and 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to obtain a written fee agreement in violation of Rule 1.5(b); failing to hold client funds in an account designated as a "client's trust account" and failing to keep records of the funds in violation of Rule 1.15(a); failing to place unearned fees in a trust

---

[22] Rule 1.1 of the West Virginia Rules of Professional Conduct provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

16

account and leaving earned fees in his trust account in violation of Rule 1.15(c); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### I. Count IX—Complaint of Dani K. Jones and Andrew M. Arrick

Ms. Jones and Mr. Arrick contacted Mr. Morgan's law office and spoke to an employee about hiring Mr. Morgan to handle a case involving their house. The employee met with Ms. Jones, reviewed her files and agreed to take the files for Mr. Morgan to review. Ms. Jones was concerned about the statute of limitations running soon, but the employee assured her that it "was fine." A few weeks later, after not hearing back from Mr. Morgan's firm, Ms. Jones texted the employee and asked for her file back. She stated that another attorney confirmed that the statute of limitations indeed had passed. Mr. Morgan failed to respond to one letter from the ODC requiring it to send an additional letter.

Mr. Morgan was charged with not acting competently and diligently in handling the case in violation of Rules 1.1 and 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to ensure his staff's conduct was compatible with Mr. Morgan's obligation under the rules in violation of Rule 5.3; and failing to timely respond to the ODC in violation of Rule 8.1(b).

### J. Count X—Complaint of R.D.

R.D. hired Mr. Morgan to represent her in her divorce case. R.D. was upset with Mr. Morgan's representation and his lack of communication with her. Further, a review of Mr. Morgan's IOLTA account did not show a deposit during the month R.D. paid the retainer even though Mr. Morgan stated it was deposited into the IOLTA account. The balance of the IOLTA account at the end of the month was less than the amount paid by R.D. Mr. Morgan also failed to respond to a letter from the ODC requiring it to send an additional letter.

Mr. Morgan was charged with not acting competently and diligently in handling the case in violation of Rules 1.1 and 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to hold client funds in an account designated as a "client's trust account" funds in violation of Rule 1.15(a); failing to place unearned fees in a trust account in violation of Rule 1.15(c); making a false statement during the investigation of the ethics complaint in violation of Rule 8.1(a); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### K. Count XI—Complaint of T.R.

T.R. hired Mr. Morgan to represent her in her divorce case. T.R. was upset with Mr. Morgan's representation and his lack of communication with her. T.R.'s new

18

counsel indicated that Mr. Morgan did not file anything in the divorce case beyond the original pleading. Moreover, T.R.'s new counsel stated that she was unable to obtain the client file even though she requested it.

On or about July 3, 2018, Disciplinary Counsel obtained a subpoena for Mr. Morgan to appear for a sworn statement in August. He was sent a copy of the ethics complaint along with a letter informing him to file a verified response within twenty days— he failed to file a response. Mr. Morgan then obtained counsel and the ethics complaint was sent to his counsel. Mr. Morgan responded that much of the communication issues occurred while he was having medical issues. He stated that he had T.R.'s file, and that he filed the divorce petition in August of 2017 and represented her at a temporary support hearing.

Further investigation and the docket sheet show that Mr. Morgan did nothing in T.R.'s case beyond the original filing in August of 2018. T.R. also denied that Mr. Morgan ever represented her in a temporary support hearing because no hearing was ever held. In his sworn statement in November of 2018, Mr. Morgan stated that he did not remember T.R. and was unaware of the retainer paid to him. He also alleged that he could not remember what he filed on T.R.'s behalf. He had no accounting of this case and was unaware of why T.R. never received her file. These were found to be false statements.

19

A review of Mr. Morgan's IOLTA account did not show a deposit during the month T.R. paid the retainer fee and the IOLTA account had a negative balance by the end of that month. T.R. never received the unearned fees. Rather, the bank statements show that the checks were deposited into Mr. Morgan's operating account. Lastly, Mr. Morgan failed to respond to two letters from the ODC requiring it to send additional letters.

Mr. Morgan was charged with not acting competently and diligently in handling the case in violation of Rules 1.1 and 1.3; failing to hold client funds in an account designated as a "client's trust account" in violation of Rule 1.15(a); failing to place unearned fees into a client trust account in violation of 1.15(c); failing to provide the client with unearned fees in violation of Rule 1.16(d); failing to ensure his staff's conduct was compatible with his professional obligations under the Rules in violation of Rule 5.3; providing a false statement during the investigation in violation of Rule 8.1(a); and failing to timely respond to the ODC in violation of Rule 8.1(b).

## L.  Count XII—Complaint of D.K.

D.K. hired Mr. Morgan to represent her in her divorce case. D.K. stated that she spoke with Mr. Morgan's employee and was unable to communicate with Mr. Morgan himself. When asked, Mr. Morgan said he did not recall having D.K. as a client, but her new counsel indicated that Mr. Morgan filed D.K.'s divorce and appeared in court on her behalf. New counsel further noted that Mr. Morgan did not file the proper pleadings in the case. A review of Mr. Morgan's IOLTA account did not show a deposit during the month

20

D.K. paid the retainer even though Mr. Morgan stated it was deposited into the IOLTA account. A check for $50.00 was written out to Mr. Morgan from D.K. on August 3, 2017. Another check for $3,000.00 to Mr. Morgan was signed by D.K. and dated August 4. The balance of the IOLTA account at the end of August was $35.43. Mr. Morgan also failed to respond to two letters from the ODC requiring it to send additional letters.

Mr. Morgan was charged with not acting competently and diligently in handling the case in violation of Rules 1.1 and 1.3; failing to properly communicate; failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to hold client funds in an account designated as a "client's trust account" and failing to keep records of the funds in violation of Rule 1.15(a); failing to place unearned fees in a trust account in violation of Rule 1.15(c); failing to ensure his staff's conduct was compatible with the rules in violation of Rule 5.3; providing a false statement during the investigation in violation of Rule 8.1(a); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### M. Count XIII—Complaint of Hunter P. Chellis

Ms. Chellis hired Mr. Morgan for representation regarding an auto accident. Ms. Chellis stated that she was unable to communicate with Mr. Morgan. Mr. Morgan settled Ms. Chellis' case; the settlement check was deposited into the IOLTA account; and a check was written out to Ms. Chellis from the same account. There was no written fee

agreement in the client file.  Mr. Morgan also failed to respond to a letter from the ODC requiring it to send an additional letter.

Mr. Morgan was charged with not acting diligently in handling the case in violation of Rule 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to obtain a written fee agreement in a contingent case in violation of Rule 1.5(b); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### N.  Count XIV—Complaint of Sara E. Reynolds

Ms. Reynolds hired Mr. Morgan for representation regarding an automobile accident.  Ms. Reynolds stated that she was unable to communicate with Mr. Morgan.  Mr. Morgan settled Ms. Reynolds' case; the settlement check was deposited into the IOLTA account; and a check was written out to Ms. Reynolds from the same account.  Mr. Morgan also failed to respond to a letter from the ODC requiring it to send an additional letter.

Mr. Morgan was charged with failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); and failing to timely respond to the ODC in violation of Rule 8.1(b).

22

### O. Count XV—Complaint of Theresa L. Reynolds

Ms. Reynolds hired Mr. Morgan for representation regarding an automobile accident. Ms. Reynolds stated that she was unable to communicate with Mr. Morgan. Each time, she was told that Mr. Morgan would call her back, but he never did. Mr. Morgan settled Ms. Reynolds' case; the settlement check was deposited into the IOLTA account; and a check was written out to Ms. Reynolds in July from the same account. However, at the end of July, the IOLTA account had a negative balance of -$153.57. Mr. Morgan also failed to respond to a letter from the ODC requiring it to send an additional letter.

Mr. Morgan was charged with not acting diligently in handling the case in violation of Rule 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to obtain a written fee agreement in a contingent case in violation of Rule 1.5(b); failing to hold third party funds in an account designated as a "client's trust account" in violation of Rule 1.15(a); misappropriating and converting client finds in violation of Rules 8.4(c) and 8.4(d); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### P. Count XVI—Complaint of Crystal M. Sheppard

Ms. Sheppard hired Mr. Morgan for representation regarding an auto accident. Ms. Sheppard stated that she was unable to communicate with Mr. Morgan and she ended up terminating Mr. Morgan as her counsel. Mr. Morgan did not provide Ms.

Sheppard with her client file or the unearned fees.   Mr. Morgan also failed to respond to a letter from the ODC requiring it to send an additional letter.

Mr. Morgan was charged with not acting diligently in handling the case in violation of Rule 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to provide the client file and unearned fees in violation of Rule 1.16(d); and failing to timely respond to the ODC in violation of Rule 8.1(b).

### Q. Count XVII—Complaint of J.H.

J.H. hired Mr. Morgan for representation in a family court matter.  J.H. stated that he had issues communicating with Mr. Morgan.  Mr. Morgan stated that any payment from J.H. was placed in the IOLTA account.  However, a review of the IOLTA account did not show a deposit during the month J.H. paid Mr. Morgan, and the balance in the IOLTA account was negative that same month.

Mr. Morgan was charged with not acting competently and diligently in handling the case in violation of Rules 1.1 and 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to hold client funds in an account designated as a "client's trust account" and failing

24

to keep complete records of the funds paid to him in violation of Rule 1.15(a); failing to place unearned fees in his trust account in violation of Rule 1.15(c); and engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(c).

### R.  Count XVIII—Complaint of Elizabeth Ann Good

Ms. Good was an employee of Mr. Morgan, and Mr. Morgan failed to pay her wages in a timely manner.  Mr. Morgan acknowledged that Ms. Good was owed wages. Mr. Morgan was charged with failing to timely respond to the ODC in violation of Rule 8.1(b); and failing to timely pay wages in violation of Rule 8.4(b).

### S.  Count XIX—Complaint of Kelsea Hower and Lisa Stansell

Ms. Stansell hired Mr. Morgan to represent her daughter, Ms. Hower, regarding an automobile accident.  The lawsuit was settled in April of 2017, but Ms. Hower never received any settlement money, and both Ms. Hower and Ms. Stansell were unable to communicate with Mr. Morgan.   Mr. Morgan asserted that he was working on subrogation issues, and that the settlement funds would have been placed in the IOLTA account.  However, upon review of the account, although the settlement was deposited into the account, the account had a negative balance four months later—and no payments were ever made to Ms. Hower.  Mr. Morgan eventually did send Ms. Hower a check from his IOLTA account, but it is unknown where these funds came from as the funds had already disappeared from the IOLTA account.

Mr. Morgan was charged with not acting competently and diligently in handling the case in violation of Rules 1.1 and 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to hold client funds in an account designated as a "client's trust account" and failing to keep complete records of the funds in violation of Rule 1.15(a); failing to ensure his staff's conduct was compatible with the rules in violation of Rule 5.3; providing a false statement during the investigation in violation of Rule 8.1(a); and misappropriating and converting client funds in violation of Rules 8.4(c) and 8.4(d).

## T. Count XX—Complaint of the Office of Disciplinary Counsel

The ODC received information from the West Virginia State Bar about an application filed with the Lawyers Fund for Client Protection Committee by P.B. P.B. paid a retainer fee to an employee of Mr. Morgan for representation in a divorce proceeding. There was no written fee arrangement in the case. Mr. Morgan stated that he earned some of the retainer, but not all of it. P.B. hired new counsel and was not provided with his client file or a refund of the unearned fees. Finally, a review of Mr. Morgan's IOLTA account did not show a deposit of P.B.'s retainer.

Mr. Morgan was charged with not acting diligently or expeditiously in handling the case in violation of Rules 1.3 and 3.2; failing to obtain a written fee agreement in violation of Rule 1.5(b); failing to properly communicate, failing to keep the client

26

reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); failing to hold client funds in an account designated as a "client's trust account" and failing to keep complete records of the funds in violation of Rule 1.15(a); failing to place unearned fees in a client trust account in violation of Rule 1.15(c); failing to provide the client file and unearned fees in violation of Rule 1.16(d); and failing to ensure his staff's conduct was compatible with the rules in violation of Rule 5.3.

### U. Count XXI—Complaint of Brandon E. Perdue

Mr. Morgan was appointed to represent Mr. Perdue in a criminal matter. Mr. Morgan failed to appear for a court hearing, and Mr. Perdue had issues communicating with Mr. Morgan. According to Mr. Morgan, he was not informed of the court hearing and was unaware of letters from his client that were in the client file. After seven months, new counsel was appointed for Mr. Perdue, and the case was resolved three and a half months later.

Mr. Morgan was charged with not acting competently and diligently in handling the case in violation of Rules 1.1 and 1.3; failing to properly communicate, failing to keep the client reasonably informed about the status of the case, and failing to promptly comply with reasonable requests for information in violation of Rules 1.4(a) and 1.4(b); and failing to expeditiously handle Mr. Perdue's case in violation of Rule 3.2.

### V. Count XXII—Complaint of Zana G. Osborne

Ms. Osborne met with an employee of Mr. Morgan regarding an automobile accident. When Ms. Osborne attempted to communicate with Mr. Morgan on a later date, she was told that the employee took her paperwork when he left the firm. Mr. Morgan does not dispute that his employee spoke with Ms. Osborne. Mr. Morgan was charged with failing to ensure his staff's conduct was compatible with the rules in violation of Rule 5.3.

### W. Statement of Charges and Recommendation of the HPS

A Statement of Charges was issued against Mr. Morgan and filed with this Court on September 30, 2019. It set forth the following alleged violations of the West Virginia Rules of Professional Conduct:

Rule 1.1: failing to competently and diligently handle client cases

Rule 1.3: failing to be diligent; failing to expedite litigation; allowing a statute of limitations to expire; failing to competently handle client cases

Rule 1.4(a): failing to keep clients reasonably informed about the state of their cases; failing to promptly comply with reasonable requests for information; failure to communicate

Rule 1.4(b): failing to communicate; failing to keep clients reasonably informed about the state of their cases; failing to promptly comply with reasonable requests for information

Rule 1.5(a): engaging in improper and unsubstantiated billing in his Public Defender cases

Rule 1.5(b): representing clients without a written fee agreement

Rule 1.15(a): failing to hold client funds in separate client trust accounts; failing to keep complete records of funds

Rule 1.15(c): failing to put unearned client funds in a trust account; leaving unearned fees in his trust account

Rule 1.15(d): failing to provide a full accounting upon client request

Rule 1.16(d): failing to refund unearned fees; failing to provide the client file

Rule 3.2: failing to be diligent; failing to expedite litigation; allowing a statute of limitations to expire

Rule 3.3(a): misrepresenting his actual and necessary time expended for services performed in Public Defender filings before the appointed circuit judge and/or appointing tribunal

Rule 5.3: failing to supervise legal assistants

Rule 7.5: using "and Associates" in his law office name when he was the only attorney

Rule 8.1(a): making false statements about the work he performed on Public Defender cases; providing false information about the accounting he provided; providing false information about client having the client file and placing the retainer in the trust account during the disciplinary investigation; providing false information about not fulfilling a request for a client file for new counsel; being unaware of the retainer paid to him; providing false information about not recalling having a client and not being aware of the retainer contract or payment

Rule 8.1(b): failing to timely respond to the Office of Disciplinary Counsel

Rule 8.4(b): failing to pay state and federal taxes; failing to pay his workers' compensation premiums

Rule 8.4(c): engaging in improper and unsubstantiated billing in his Public Defender cases; misrepresenting the state of cases; converting client funds into his own funds; failing to be diligent; failing to expedite litigation; allowing a statute of limitations to expire; misappropriating and converting client funds; providing worthless checks; engaging in dishonest, fraudulent, and deceitful conduct by stating in his sworn statement that he would have filed a competent petition for client had he known of the issues, when in fact he had filed a petition

Rule 8.4(d): engaging in improper and unsubstantiated billing in his Public Defender cases; misrepresenting the state of cases; converting client funds into his own funds; failing to be diligent; failing to expedite litigation; allowing a statute of limitations to expire; misappropriating and converting client funds; providing worthless checks

The HPS found, in its Statement of Charges, that Mr. Morgan committed 134 separate violations of the West Virginia Rules of Professional Conduct.[23]  Mr. Morgan timely filed his answer to the Statement of Charges on November 4, 2019.  A hearing was held before the HPS on January 27, 2020, during which Mr. Morgan provided sworn testimony.

In October of 2019, the ODC filed a petition for the immediate suspension of Mr. Morgan's license to practice law pending the resolution of the disciplinary charges against him.  The ODC argued that Rule 3.27 of the West Virginia Rules of Lawyer

---

[23] The number for each rule violation is as follows: Rule 1.1 (8 violations); Rule 1.3 (13 violations); Rule 1.4(a) (13 violations); Rule 1.4(b) (13 violations); Rule 1.5(a) (1 violation); Rule 1.5(b) (5 violations); Rule 1.15(a) (14 violations); Rule 1.15(c) (10 violations); Rule 1.15(d) (1 violation); Rule 1.16(d) (8 violations); Rule 3.2 (3 violations); Rule 3.3(a) (1 violation); Rule 5.3 (7 violations); Rule 7.5 (1 violation); Rule 8.1(a) (6 violations); Rule 8.1(b) (15 violations); Rule 8.4(b) (1 violation); Rule 8.4(c) (7 violations); and Rule 8.4(d) (7 violations).

Disciplinary Procedure provides a mechanism to suspend a lawyer from the practice of law when he or she "(1) has committed a violation of the Rules of Professional Conduct or is under a disability and (2) poses a substantial threat of irreparable harm to the public." W. Va. R. Law. Disc. P. 3.27(a). "If the Court, after proceeding in accordance with [Rule] 3.27(c), [24] concludes that the respondent lawyer should be temporarily suspended, it will so order." Syl. pt. 3, in part, *Office of Disc. Counsel v. Battistelli*, 193 W. Va. 629, 457 S.E.2d 652 (1995) (footnote added). Upon review, this Court found sufficient evidence to initially demonstrate that Mr. Morgan had violated the West Virginia Rules of Professional Conduct and that he posed a substantial threat of irreparable harm to the public. Accordingly, the ODC's petition for interim suspension was granted, and we also ordered the HPS to file its report no later than sixty days from the date of the Court's opinion.[25] Further, we ordered the Chief Judge of the Circuit Court of Greenbrier County to appoint a lawyer to serve as trustee for Mr. Morgan's law practice.[26]

---

[24] Rule 3.27(c) provides:

> Upon receipt of this report, the Supreme Court, upon determining the existence of good cause, shall provide notice of the charges to the lawyer with the right to a hearing in not less than thirty days before the Court. The Supreme Court may appoint a trustee to protect the interest of the lawyer's clients during the pendency of these proceedings. After such hearing, the Supreme Court may temporarily suspend the lawyer or may order such other action as it deems appropriate until underlying disciplinary proceedings before the Lawyer Disciplinary Board have been completed.

[25] *Office of Disc. Counsel v. Morgan*, 242 W. Va. at ___, 839 S.E.2d at 157.

[26] *See id.*

On April 9, 2020, the HPS issued its report in this matter, and found the evidence established that Mr. Morgan had violated the West Virginia Rules of Professional Conduct as suggested in the Statement of Charges. The HPS recommended that the following sanctions be imposed:

1.  That [Mr. Morgan]'s law license be annulled;

2.  That [Mr. Morgan] refund the following:

    i.    $1,192.50 to Public Defender Services;
    ii.   $7,500.00 to Valerie Norwood;
    iii.  $3,500.00 to W.T.;
    iv.   $3,500.00 to E.L.;
    v.    $9,000.00 to Todd Clutter;
    vi.   $1,250.00 to Lonnie Lilly;
    vii.  $3,000.00 to R.D.;
    viii. $4,800.00 to T.R.;
    ix.   $3,050.00 to D.K.;
    x.    $1,300.00 to J.H.;
    xi.   Judgment plus interest to Elizabeth Good; and
    xii.  $3,500.00 to P.B.

3.  That [Mr. Morgan] must comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure unless he has submitted such as part of his immediate suspension in Case No. 19-0885; and

4.  [Mr. Morgan] be ordered to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Thereafter, on April 30, 2020, the ODC filed its consent to the recommendation of the HPS. Mr. Morgan filed his objection to the recommendation on May 6, 2020. By order dated May 28, 2020, this Court ordered the matter to be briefed and set for oral argument.

## II.

## STANDARD OF REVIEW

When this Court considers a lawyer disciplinary matter,

> [a] *de novo* standard applies to a review of the adjudicatory record made before the [Hearing Panel Subcommittee of the Lawyer Disciplinary Board ("HPS")] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [HPS's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [HPS's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W. Va. 286, 452 S.E.2d 377 (1994).

Further, while we give respectful consideration to the recommendations of the HPS, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions[,] or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W. Va. 494, 327 S.E.2d 671 (1984).

Finally, in an effort to ensure the highest quality of legal services in this State, we also have stated that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disc. Bd. v. Taylor*, 192 W. Va. 139, 144, 451 S.E.2d 440, 445 (1994). With these standards in mind, we proceed to consider the arguments before the Court.

## III.

## DISCUSSION

Upon review of lawyer disciplinary cases, we recognize that the ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part, *Lawyer Disc. Bd. v. McGraw*, 194 W. Va. 788, 461 S.E.2d 850 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15[27] of the West Virginia Rules of Lawyer Disciplinary Procedure. This Court then looks to Syllabus point 4 of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W. Va. 495, 513 S.E.2d 722 (1998), for guidance in determining the appropriateness of sanctions:

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has

---

[27] According to Rule 3.15 of the West Virginia Rules of Lawyer Disciplinary Procedure,

> [a] Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the panel or the Court finds the reimbursement will pose an undue hardship on the lawyer. Willful failure to reimburse the Board may be punished as contempt of the Court.

violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

With these principles in mind, we will consider each of the *Jordan* factors. Then, we will address the imposition of appropriate sanctions.

### A. Duty Violated

The first *Jordan* factor questions "whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession." Syl. pt. 4, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. This Court continuously has recognized that "attorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Comm. on Legal Ethics v. Keenan*, 192 W. Va. 90, 94, 450 S.E.2d 787, 791 (1994). Here, the record overwhelmingly illustrates that Mr. Morgan violated duties to his clients, the public, and the legal profession. Specifically, the sheer number of complaints against Mr. Morgan demonstrates that he breached his duty to his clients by repeatedly failing to protect his clients' funds, by failing to keep his clients informed, by failing to communicate with his clients, and by failing to provide competent representation. Further, while Mr. Morgan contends that he had good intentions, he acknowledges that the record demonstrates—by clear and convincing evidence—that he violated his duties and failed to do some of the basic things required of all lawyers.

Due to the lengthy and detailed record, and the acknowledgement of Mr. Morgan, we find no reason to disturb the parties' contentions regarding the underlying facts, and, as such, we agree that Mr. Morgan's actions violated duties he owed to the public, the legal system, and the legal profession.

### B. Intentional, Knowing, or Negligent Actions

Relating to the second *Jordan* factor, we must examine Mr. Morgan's mental state at the time of his rule violations. In particular, the second *Jordan* factor asks us to determine "whether the lawyer acted intentionally, knowingly, or negligently." Syl. pt. 4, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. The American Bar Association defines "intent" as the "conscious objective or purpose to accomplish a particular result." *Annotated ABA Standards for Imposing Lawyer Sanctions*, Definition (2015). "Knowledge" is defined as the "conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* Moreover, "negligent" conduct is defined as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard care that a reasonable lawyer would exercise in the situation." *Id.*

The HPS found that Mr. Morgan acted both intentionally and knowingly over the course of committing his violations. He failed to properly supervise his staff, mishandled client finds, and repeatedly ignored correspondence from the ODC. Mr.

Morgan argues that his actions were not done intentionally or knowingly. While he admits that his shortcomings were exacerbated by a combination of medical problems and an overreliance on his staff, he asserts that the description of his actions rise only to the level of negligence.

In the case sub judice, the HPS found, and we agree, that Mr. Morgan acted intentionally and knowingly. Mr. Morgan was responsible for his law firm and failed to manage his staff in client matters including communication, depositing client funds into the correct accounts, and reviewing vouchers submitted to the Public Defender for payment, among other things. The record in this case shows that not only did Mr. Morgan commit a multitude of violations, but that Mr. Morgan *continued* to commit misconduct *after* ethics complaints had been filed against him. Moreover, Mr. Morgan's most important responsibility was the safekeeping of client funds—which he did not do. He failed to review bank statements and was unaware of his IOLTA account's negative balance until Disciplinary Counsel informed him of such. This can be characterized as nothing but intentional behavior. Regardless of Mr. Morgan's contentions and attempts to blame his misconduct on a rogue employee, the fact remains that it is Mr. Morgan who was responsible for his office, and it is his law license that clients relied on to protect their interests.

Furthermore, the fact that Mr. Morgan's actions amounted to a disturbing and extensive pattern of misconduct leads us to the conclusion that Mr. Morgan's mental

status could not be characterized as mere negligence—this is clearly a case where the attorney knew of his wrongdoings. Therefore, we find that the record is clear that Mr. Morgan acted intentionally and knowingly, and we find nothing in the evidence that would excuse this behavior.

### C. Actual or Potential Injury

Under the third *Jordan* factor, we are required to consider "the amount of the actual or potential injury caused by the lawyer's misconduct." Syl. pt. 4, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. Here, the parties agree that there was injury caused by Mr. Morgan's actions. In particular, the LDB noted that "[e]very witness called by Disciplinary Counsel testified that their opinion of lawyers was affected in a negative way by [Mr. Morgan's] misconduct." Client funds still have not been returned, justice was delayed or denied completely, and the public has paid for Mr. Morgan's overbilling of the Public Defender Services. Due to the statements of both parties, and the evidence presented in the record, we agree that there has been clear injury to Mr. Morgan's clients, the general public, and the legal system in this matter.

### D. Aggravating and Mitigating Factors

Finally, under the fourth *Jordan* factor, we are required to consider "the existence of any aggravating or mitigating factors." Syl. pt. 4, in part, *Jordan*, 204 W. Va. 495, 513 S.E.2d 722. We will address both sets of factors in turn.

1.     **Aggravating Factors.** In Syllabus point 4 of *Lawyer Disciplinary Board v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003), this Court held that "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Here, the HPS identified six aggravating factors: (1) prior discipline;[28] (2) dishonesty; (3) pattern of misconduct; (4) multiple offenses; (5) substantial experience in the practice of law; and (6) illegal conduct.

2.     **Mitigating Factors.** In addition to adopting aggravating factors in *Scott*, this Court also adopted mitigating factors to examine when determining the appropriateness of sanctions.

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

---

[28] Mr. Morgan was admonished by the Investigative Panel on January 21, 2018, for violation of Rule 1.4 (failure to communicate); and Rule 1.5 (failure to obtain a fee agreement in writing).

Syl. pt. 3, *id.* Here, the HPS identified two mitigating factors: (1) physical illness related to his medical issues which required surgery in 2018 and (2) remorse.

Having considered all the factors set out in *Jordan*, the final step is to decide the appropriate sanction in light of those factors.

### *E. Sanctions*

This Court frequently has recognized that "[t]he principle purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice." Syl. pt. 3, *Daily Gazette Co. v. Comm. on Legal Ethics*, 174 W. Va. 359, 326 S.E.2d 705 (1984). Additionally, sanctions must be designed to "serve as a deterrent to other attorneys." *McCorkle*, 192 W. Va. at 291, 452 S.E.2d at 382. Under Rule 3.15 of the Rules of Lawyer Disciplinary Procedure, the following are recognized as permissible types of sanctions:

> (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed, the Hearing Panel Subcommittee or the Court shall order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the disciplinary proceeding unless the panel or the Court finds the reimbursement will pose an undue hardship on the lawyer. Willful failure to reimburse the Board may be punished as contempt of the Court.

Further, this Court has explained that

> [i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would

40

> appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Comm. on Legal Ethics v. Walker*, 178 W. Va. 150, 358 S.E.2d 234 (1987).

*Accord* Syl. pt. 4, *McCorkle*, 192 W. Va. 286, 452 S.E.2d 377; Syl. pt. 2, *Comm. on Legal*

*Ethics v. White*, 189 W. Va. 135, 428 S.E.2d 556 (1993); Syl. pt. 5, *Comm. on Legal Ethics*

*v. Roark*, 181 W. Va. 260, 382 S.E.2d 313 (1989).

Based upon its consideration of the *Jordan* factors and this Court's precedent, the HPS recommended (1) that Mr. Morgan's license to practice law be annulled; (2) that he refund specified clients; (3) that he comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure; and (4) that Mr. Morgan pay the costs of the proceedings pursuant to Rule 3.15.

When taking into account all of the factors to be considered in imposing sanctions, we agree with the ODC that the recommended types of sanctions submitted are appropriate for the egregious behavior exhibited by Mr. Morgan. Our review of this case reveals that Mr. Morgan committed violations of all of the *Jordan* factors. As noted by this Court in Mr. Morgan's suspension case from earlier this year, "[t]here are multiple allegations of failing to act diligently, failing to adequately communicate with his clients, exhibiting a lack of candor and outright dishonesty, and failing to ensure that his employees acted in a manner consistent with the respondent's ethical obligations." *Morgan*, 242 W.

41

Va. at ___, 839 S.E.2d at 155. In particular, "the allegations that are particularly worrisome to this Court are the claims that the respondent mishandled and misappropriated client money." *Id.* By his own admission, Mr. Morgan testified at his hearing that a "lack of communication, lack of diligence, lack of written fee arrangement[s], lack of settlement statements, commingling of money, [and the] improper use of the escrow trust account" were issues for him. He further admitted to not having time records or an office management system and acknowledged his failure to maintain proper review of his bank accounts.

In an attempt to excuse his behavior, Mr. Morgan states that a former paralegal embezzled money from his clients and his law firm. While this may be true, we reject it as a defense to the numerous, inexcusable violations committed by Mr. Morgan, himself. In his brief to this Court, Mr. Morgan acknowledged that he knew of the paralegal's criminal past, yet he "decided to give him a chance" and delegated critical office functions and responsibilities to him. Mr. Morgan reported the paralegal "to the police in January 2018—yet, even after that date, [Mr. Morgan] failed to review the bank statements for his client trust account. He apparently only became aware of the negative balance in the account during his sworn statement given to the ODC in November 2018." *Id.* at ___, 839 S.E.2d at 156.

Mr. Morgan also contends that a medical condition prevented him from working for several months—primarily from November of 2017 through July of 2018. He alleges that during this time, while in the hospital, he learned that his paralegal had been arrested in Virginia for an outstanding warrant from Pennsylvania. Once the paralegal was arrested, Mr. Morgan's office was completely unstaffed. However, despite these alleged setbacks, the bank statement submitted by the ODC demonstrates that Mr. Morgan's client trust account had a negative balance *well before* the aforementioned timeframe.

The conversion and comingling of client funds—as shown by Mr. Morgan's own admissions and the introduction of his bank statements into the record—is a serious violation that undermines not only the public's confidence in Mr. Morgan, but also in the legal community as a whole. Due to the gravity of these violations, we find that Mr. Morgan has not presented any compelling extenuating circumstances that would excuse his careless behavior. In this case, Mr. Morgan chose not to review the bank statements at any point, and he only reported his paralegal to the police once he became aware of the negative balance of his IOLTA client trust account. These are deliberate choices made by Mr. Morgan that show he had no concern for the client funds entrusted to him, no concern for the caretaking of his law firm, and no concern for the welfare of his clients.

This Court has held that "[d]etaining money collected in a professional or fiduciary capacity without [a] bona fide claim coupled with acts of dishonesty, fraud, deceit or misrepresentation justify annulment of an attorney's license to practice law." Syl. pt. 5,

43

*Comm. on Legal Ethics of W. Va. State Bar v. Pence*, 161 W. Va. 240, 240 S.E.2d 668 (1977); *see also Lawyer Disc. Bd. v. Kupec*, 202 W. Va. 556, 569, 505 S.E.2d 619, 632 (1998) (collecting cases, including *Comm. on Legal Ethics of the W. Va. State Bar v. Lambert,* 189 W. Va. 84, 428 S.E.2d 65 (1993) (per curiam) (annulling attorney's license when he converted property of two clients to his own personal use); *Comm. on Legal Ethics of the W. Va. State Bar v. Six,* 181 W. Va. 52, 380 S.E.2d 219 (1989) (annulling attorney's license following conviction for embezzlement of client funds); *Comm. on Legal Ethics of W. Va. State Bar v. White,* 176 W. Va. 753, 349 S.E.2d 919 (1986) (per curiam) (finding conversion of client trust funds warranted disbarment); *In re Hendricks,* 155 W. Va. 516, 185 S.E.2d 336 (1971) (per curiam) (justifying annulment of attorney's license based upon detention of money collected in professional and fiduciary capacity without bona fide claim and acts of fraud and deceit).

We find Mr. Morgan's misconduct to be similar to the conduct displayed by the attorney in *Lawyer Disciplinary Board v. Scotchel*, 234 W. Va. 627, 768 S.E.2d 730 (2014). In *Scotchel*, Mr. Scotchel's law license was annulled when he improperly retained client funds, failed to provide full accountings, failed to communicate with his client, and failed to have written contingent fee arrangements. *Id.* at 638-39, 768 S.E.2d at 741-42. Like Mr. Morgan, the attorney in *Scotchel* also was a solo practitioner who had been practicing law for more than two decades and who displayed multiple aggravating factors, including having substantial experience in the practice of law. *Id.* at 631, 768 S.E.2d at 734. For this misconduct, Mr. Scotchel's law license was annulled.

44

However, while Mr. Morgan's misconduct is similar in nature to the conduct punished in *Scotchel*, Mr. Morgan's misconduct *exceeds* the conduct in *Scotchel* in both numerosity and egregiousness. While Mr. Scotchel violated seven rules of the West Virginia Rules of Professional Conduct, Mr. Morgan violated nineteen different rules. Mr. Scotchel's case was based on the complaints of one complainant. Mr. Morgan's case is based on twenty-two separate complaints filed by multiple complainants. Finally, Mr. Scotchel had no prior discipline, whereas in the present case, Mr. Morgan does have prior discipline.

When discussing the violation of misappropriating client funds, this Court has recognized the following:

> The term misappropriation can have various meanings. In fact, the misuse of another's funds is characterized as misappropriation or conversion. Black's defines misappropriation as "[t]he unauthorized, improper, or unlawful use of funds or other property for purposes other than that for which intended . . . including not only stealing but also unauthorized temporary use for [the] lawyer's own purpose, whether or not he derives any gain or benefit from therefrom." Black's Law Dictionary (6th ed.1990). *See In re Wilson*, 81 N.J. 451, 409 A.2d 1153, 1155 n. 1 (1979) (defining misappropriation as "any unauthorized use by the lawyer of client's funds entrusted to him including not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom").

*Kupec*, 202 W. Va. at 568, 505 S.E.2d at 631. Further,

> [t]he American Bar Association Model Standards for Imposing Lawyer Sanctions (hereinafter "ABA standards") classify

45

misappropriation offenses according to the level of intent and the level of the injury. The ABA standards are consistent with the general rule in finding disbarment appropriate in cases of knowing conversion with injury or potential injury to the owner of entrusted funds. Where there is little or no actual or potential injury to the owner of entrusted funds, and when the lawyer knows or should know he/she is dealing improperly with entrusted funds, the ABA standards suggest suspension. When the lawyer is merely negligent in dealing with entrusted funds, the ABA standards suggest reprimand or admonishment. *See generally* ABA/BNA Lawyers' Manual on Professional Conduct § 01:801 (1992).

*Kupec*, 202 W. Va. at 569, 505 S.E.2d at 632.

In the case sub judice, Mr. Morgan testified that he has not billed the Public Defender for his work in court-appointed cases since May of 2018; however, this does not mitigate his admitted misconduct in overbilling or his conversion of the money he was holding for such work. Moreover, the evidence is clear that Mr. Morgan repeatedly failed to safekeep client funds and he never reviewed bank statements pertaining to his office and client trust accounts.

This Court takes the misappropriation of client funds seriously, and it

has disbarred several lawyers due to misappropriation of client funds. In *Lawyer Disciplinary Board v. Battistelli*, 206 W. Va. 197, 523 S.E.2d 257 (1999), a lawyer was disbarred for, among other misconduct, neglect of client affairs, repeatedly lying to a client about the status of a case, and withholding too much money from a client's settlement and never sending this money to either a provider or refunding it to the client. In *Committee on Legal Ethics v. Lambert*, 189 W. Va. 84, 428 S.E.2d 65 (1993), a lawyer was disbarred for conversion of a client's money to his own personal use, causing a forged instrument to

46

be uttered, failure to pay over money received on behalf of a client, and failure to inform the Disciplinary Committee of a debt to a client during a reinstatement proceeding. In *Committee on Legal Ethics v. Pence*, 161 W. Va. 240, 240 S.E.2d 668 (1977), a lawyer was disbarred for detaining money collected in a professional or fiduciary capacity without bona fide claim, coupled with acts of dishonesty, fraud, deceit or misrepresentation. In *Committee on Legal Ethics v. White,* 176 W. Va. 753, 349 S.E.2d 919 (1986), a lawyer was disbarred for conversion of client trust funds. In *In re Hendricks*, 155 W. Va. 516, 185 S.E.2d 336 (1971), another lawyer was disbarred for detaining client money without a bona fide claim and for acts of fraud and deceit.

In *Lawyer Disciplinary Board v. Coleman*, 219 W. Va. 790, 639 S.E.2d 882 (2006), this Court stated that "we do not take lightly those disciplinary cases in which a lawyer's misconduct involves the misappropriation of money. *In such instances, we have resolutely held that, unless the attorney facing discipline can demonstrate otherwise, disbarment is the only sanction befitting of such grievous misconduct*." *Id.* at 797, 639 S.E.2d at 889. In addition, "misappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishonesty and will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Kupec*, 202 W. Va. at 571, 505 S.E.2d at 634.

*Scotchel*, 234 W. Va. at 646, 768 S.E.2d at 749 (emphasis added).

While this Court finds that Mr. Morgan's misappropriation of funds is sufficient to warrant disbarment on its own, we would be remiss to ignore the numerosity and severity of Mr. Morgan's other instances of misconduct. Mr. Morgan violated nineteen different rules of the Rules of Professional Conduct, with a total of 134 separate instances of misconduct. Beyond his financial mishandlings, Mr. Morgan also committed violations regarding his competency, his diligence, his communication with clients, his failure to

47

obtain written fee agreements, his failure to provide client files to clients when requested, his failure to expedite litigation, his lack of candor and honesty, his failure to ensure employees followed his ethical obligations, his failure to not mislead with the name of his firm, his failure to respond to Disciplinary Counsel, his failure to supervise his employees, and his engagement in conduct that was prejudicial to the administration of justice. This is not a scenario involving a singular act of misconduct, but rather, this is a troubling pattern of repeated, egregious behavior.

Among the disciplinary cases in West Virginia, several support the sanction of suspension for misconduct not relating to the misappropriation of client funds. *See, e.g.*, *Lawyer Disc. Bd. v. Rossi*, 234 W. Va. 675, 769 S.E.2d 464 (2015) (lawyer's license to practice law suspended for three years after committing multiple offenses of misconduct including: lack of diligence, lack of communication, failure to properly terminate representation, failure to expedite litigation, engaging in dishonest behavior, engaging in conduct that is prejudicial to the administration of justice, and failure to respond to the ODC); *Lawyer Disc. Bd. v. Karl*, 192 W. Va. 23, 449 S.E.2d 277 (1994) (license suspended for three months for failure to act diligently and for failure to communicate); *Lawyer Disc. Bd. v. Keenan*, 189 W. Va. 37, 427 S.E.2d 471 (1993) (lawyer's license suspended indefinitely for failure to provide competent representation, failure to act diligently, and failure to communicate effectively).

However, in this instance, not only did Mr. Morgan commit the above-referenced violations but he did so while also misappropriating client funds. Unfortunately, this is not just one case of negligence by an attorney involving one employee—but rather, this is a case involving twenty-two separate complaints involving multiple clients who have been harmed and who have suffered real injury by Mr. Morgan's actions. As such, we agree that annulment is an appropriate punishment for Mr. Morgan's misconduct, which reflects both his deficient representation of clients and his misappropriation of client funds.

When considering these severe facts, we agree with the Hearing Panel Subcommittee that Mr. Morgan's behavior violated the following rules: Rule 1.1 (8 violations); Rule 1.3 (13 violations); Rule 1.4(a) (13 violations); Rule 1.4(b) (13 violations); Rule 1.5(a) (1 violation); Rule 1.5(b) (5 violations); Rule 1.15(a) (14 violations); Rule 1.15(c) (10 violations); Rule 1.15(d) (1 violation); Rule 1.16(d) (8 violations); Rule 3.2 (3 violations); Rule 3.3(a) (1 violation); Rule 5.3 (7 violations); Rule 7.5 (1 violation); Rule 8.1(a) (6 violations); Rule 8.1(b) (15 violations); Rule 8.4(b) (1 violation); Rule 8.4(c) (7 violations); and Rule 8.4(d) (7 violations). Therefore, we find that the sheer volume of these violations—in conjunction with their egregious nature—warrants the annulment of Mr. Morgan's law license.

# IV.

# CONCLUSION

We find that the following sanctions will accomplish the goals of our disciplinary system by punishing Mr. Morgan, restoring public confidence in the ethical standards of our profession, and serving as a deterrent to other members of the bar. *See Taylor*, 192 W. Va. at 144, 451 S.E.2d at 445 ("Attorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice."). For the reasons set forth above, we concur with the HPS's recommended sanctions. Therefore, we order that Mr. Morgan's law license is annulled and that he comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure unless he has submitted such as part of his immediate suspension in Case No. 19-0885. We further order Mr. Morgan to issue the following refunds:

i. $1,192.50 to Public Defender Services;
ii. $7,500.00 to Valerie Norwood;
iii. $3,500.00 to W.T.;
iv. $3,500.00 to E.L.;
v. $9,000.00 to Todd Clutter;
vi. $1,250.00 to Lonnie Lilly;
vii. $3,000.00 to R.D.;
viii. $4,800.00 to T.R.;
ix. $3,050.00 to D.K.;
x. $1,300.00 to J.H.;
xi. Judgment plus interest to Elizabeth Good; and
xii. $3,500.00 to P.B.

Finally, we order Mr. Morgan to pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Annulled and Other Sanctions Imposed.